**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| *In re:* | ) | **Chapter 11** |
| | ) | |
| **OER Services, LLC** | ) | **Case No. 21-03981** |
| | ) | |
| **Debtor.** | ) | **Honorable Janet S. Baer** |

**FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION
OF OER SERVICES, LLC**
**(Subchapter V Small Business Debtor)**

**(July 21, 2021)**

**Steve Jakubowski (IL ARDC 6191960)
Robbins, Salomon & Patt, Ltd.
180 N. LaSalle, Suite 3300
Chicago, Illinois 60601
Phone: (312) 456-0191
Email: sjakubowski@rsplaw.com**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... iii

**Article 1   BACKGROUND TO THE CASE AND SUMMARY OF THE PLAN**..................2
     **1.1**       **Description and History of the Debtor's Business; Events Leading to the Chapter 11 Filing**...............................................................2
     **1.2**       **Liquidation Analysis**....................................................................3
     **1.3**       **Ability to Make Future Plan Payments and Operate Without the Need for Further Reorganization**..........................................4
     **1.4**       **Summary of the Plan** .................................................................4

**Article 2   DEFINITIONS, RULES OF INTERPRETATION, CONSTRUCTION OF TERMS**...............................................................................................5

**Article 3   DESIGNATION OF CLAIMS AND INTERESTS**........................................5
     **3.1**       **Identification of Classes; Impaired Classes Entitled to Vote**...............5
     **3.2**       **Unimpaired Classes Deemed to Accept Plan**..........................................8
     **3.3**       **Controversy Concerning Classification, Impairment or Voting  Rights** ....................................................................................8

**Article 4   TREATMENT OF UNCLASSIFIED CLAIMS**..............................................8
     **4.1**       **Administrative Expense Claims**....................................................8
     **4.2**       **Ordinary Course Liabilities**.........................................................9
     **4.3**       **Priority Tax Claims** ...................................................................9

**Article 5   TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS** ...........................9
     **5.1**       **Class 1 Secured Claims:** ..............................................................9
     **5.2**       **Class 2: General Unsecured Claims** ..........................................18
     **5.3**       **Class 3: LLC Member Interests** ................................................19
     **5.4**       **Class 4: Zaimi Estate Claims** ....................................................20

**Article 6   MEANS FOR IMPLEMENTATION OF THE PLAN; EFFECT OF CONFIRMATION**...........................................................................21
     **6.1**       **Continued Corporate Existence and Management**...............................21
     **6.2**       **Plan Funding** ...........................................................................22
     **6.3**       **Post-Effective Date Rights and Operations** ..................................22
     **6.4**       **Preservation of Rights of Action**................................................22
     **6.5**       **Cancellation and Surrender of Instruments, Securities, and Other Documentation** ......................................................................22

**Article 7   PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND EQUITY INTERESTS AND DISTRIBUTIONS OF PROPERTY UNDER THE PLAN**.......................................................................23
     **7.1**       **Right to Object to Claims**..........................................................23
     **7.2**       **Distribution Procedures Regarding Allowed Claims** ..........................23
     **7.3**       **Distributions Only On Timely-Filed, Allowed Claims** .......................24

**Article 8   EXECUTORY CONTRACTS** ........................................................**24**
    **8.1**      **Assumption of Executory Contracts** ..................................**24**
    **8.2**      **Rejection of Executory Contracts**.....................................**25**
    **8.3**      **Procedures Related to Assumption of Executory Contracts**................**25**
    **8.4**      **Rejection Claim Bar Date** ..............................................**26**

**Article 9   EFFECT OF REJECTION BY ONE OR MORE CLASSES**.................**26**
    **9.1**      **Impaired Classes Entitled to Vote** ...................................**26**
    **9.2**      **Acceptance by Class** .....................................................**26**
    **9.3**      **Reservation of Cramdown Rights** ...................................**26**

**Article 10  EFFECT OF CONFIRMATION** .............................................**27**
    **10.1**    **Legally Binding Effect** ..................................................**27**
    **10.2**    **Vesting of Property of Debtor in Reorganized Debtor**........................**27**

**Article 11  INJUNCTIONS AND DISCHARGE** .......................................**27**
    **11.1**    **Compromise and Settlement of Claims, Interests, and Controversies** .......................................................................**27**
    **11.2**    **Discharge** ...................................................................**27**
    **11.3**    **Release of Liens** ..........................................................**27**
    **11.4**    **Subordinated Claims** ....................................................**28**
    **11.5**    **Injunction** ..................................................................**28**
    **11.6**    **Setoffs** ......................................................................**29**

**Article 12  RETENTION OF JURISDICTION** .........................................**30**
    **12.1**    **Exclusive Bankruptcy Court Jurisdiction** ........................**30**
    **12.2**    **Limitation on Jurisdiction** .............................................**31**

**Article 13  MISCELLANEOUS PROVISIONS** ........................................**31**
    **13.1**    **Conditions to Confirmation** ...........................................**31**
    **13.2**    **Conditions to Plan Effectiveness**.....................................**31**
    **13.3**    **Modification and Amendments** .......................................**31**
    **13.4**    **Waiver of Conditions** ...................................................**32**
    **13.5**    **Exemption from Transfer Taxes** .....................................**32**
    **13.6**    **Post-Effective Date Fees and Expenses**............................**32**
    **13.7**    **Defects, Omissions and Amendments of the Plan** ...............**32**
    **13.8**    **Withdrawal of Plan** ......................................................**32**
    **13.9**    **Governing Law**...........................................................**32**
    **13.10**   **Successors and Assigns** .................................................**33**
    **13.11**   **Implementation**...........................................................**33**
    **13.12**   **Entire Agreement** ........................................................**33**
    **13.13**   **Severability** ...............................................................**33**
    **13.14**   **Conflicts** ....................................................................**33**

## **EXHIBITS**

| | |
|---|---|
| **Glossary of Defined Terms** | **Exhibit A** |
| **Financial Projections / Projected Disposable Income** | **Exhibit B** |
| **Liquidation Analysis** | **Exhibit C** |
| **Schedule of Assumed Contracts and Unexpired Leases** | **Exhibit D** |
| **Retained Rights of Action** | **Exhibit E** |

OER Services LLC, debtor and debtor in possession ("OER" or "Debtor") submits this First Amended Plan of Reorganization, dated July 21, 2021 under Subchapter V of Chapter 11 (together with all exhibits and attachments thereto, as may be amended, supplemented, or otherwise modified, the "Plan"), pursuant to Sections 1189, 1190, and 1191 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor proposes this Plan to restructure its current indebtedness and to address all outstanding Claims against and Interests in the Debtor.

> **Your rights may be affected. You are encouraged to carefully review the entire Plan, including all exhibits, supplements, and attachments, and discuss with your attorney. If you do not have an attorney, you may wish to consult one.**

Capitalized terms not therein defined have the meanings in the "Glossary of Defined terms" attached hereto as Exhibit A.

This Plan provides Holders of Claims against and Interests in the Debtor with information to enable them to make an informed judgment concerning the manner in which the Debtor will reorganize and emerge from bankruptcy. **If the Court confirms the Plan, it will be binding on the Debtor, its Creditors, and other interested parties.**

This Plan provides for a comprehensive reorganization of the Debtor to preserve its going concern value and future business. This Plan proposes to pay Creditors using the Projected Disposable Income of the Debtor over the five-year period from September 1, 2021 through August 31, 2026. Allowed Secured Claims in Class 1 subclasses represented by purchase money security interests will receive their normal monthly payment due starting September 1, 2021, with any monthly amounts past due as of August 31, 2021 to be tacked on to the end of the term and then paid monthly without penalty or additional interest. Holders of Class 2 General Unsecured Claims will recover approximately 27.11% on their Allowed General Unsecured Claims. In a liquidation, such claimants would receive no recovery.

The Debtor believes this Plan represents the best possible return to holders of Claims. The Debtor believes this Plan will successfully reorganize the Debtor and that confirmation of the Plan is in the best interests of the Debtor, its Creditors, and equity interest holders. **Accordingly, the Debtor strongly urges you to vote in favor of this Joint Plan.**

Pursuant to Section 1128 of the Bankruptcy Code, a Confirmation Hearing will be held on September 1, 2021 at 1:30 p.m. Central Time. The Court may adjourn the Confirmation Hearing from time to time without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

Any objection to confirmation of the Plan must be made in writing and specify in detail the name and address of the objecting party, all grounds for the objection and the amount of the claim or number of shares of stock held by the objecting party. Any such objection must be filed with the Court and served so that it is received by the Court, the Office of the United States Trustee, the Subchapter V Trustee, Counsel for the Debtor on or before August 20, 2021. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014. Ballots to accept or reject the Plan must be filed with the Court on or before August 20, 2021.

Any interested party desiring further information about the Plan should contact counsel of record for the Debtor, Steve Jakubowski of Robbins, Salomon & Patt, Ltd., 180 N. LaSalle Street, Suite 3300, Chicago, Illinois 60601, tel: (312) 456-0191; email: sjakubowski@rsplaw.com.

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1193 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3019, AND THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS PLAN PRIOR TO ITS EFFECTIVE DATE.**

**ARTICLE 1**
**BACKGROUND TO THE CASE AND SUMMARY OF THE PLAN**

This Plan is for a small business debtor under Subchapter V of Chapter 11 of the Bankruptcy Code ("Subchapter V"). Pursuant to the requirements of 11 U.S.C. § 1190, this Plan includes (A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization.

**1.1    Description and History of the Debtor's Business; Events Leading to the Chapter 11 Filing**

OER was organized under the laws of the state of Illinois in 2009 as a limited liability company. OER is a woman-owned, small-business certified operator engaged in the business of leasing construction and industrial equipment and providing ongoing maintenance services for such leased equipment. OER's primary customers are municipal, state, and local government agencies engaged in construction projects. The Debtor's principal place of business located at 1650 Carmen Drive, Elk Grove, Illinois 60007. Majority control of the Debtor is held by April Zaimi, with the day-to-day activities of the Debtor being managed by April's husband, Ali Zaimi, who is the Debtor's president and holds a minority interest in the Debtor. The Debtor currently employs approximately seven full-time salaried employees and one part-time salaried employee, some of whom work on straight salary and others of whom receive a base salary plus commissions.

OER was founded by Ali Zaimi in September 2009. It grew steadily such that by 2017, OER earned nearly $9 million in revenue. Through the SBA 7a loan program, OER refinanced its then-existing debt with CIBC Bank USA, N.A. ("CIBC"), which took a blanket security interest on all of OER's assets. The refinancing with CIBC afforded OER the opportunity to refinance its current debt and acquire an additional approximately $1.2 million in new fleet purchases to support additional contracts that we were awarded to OER in early 2018.

At the end of 2018, OER hired a sales consulting firm for purposes of defining OER's sales processes and identifying strengths and weaknesses in respect of OER's business generally. The structural changes implemented in adopting the firm's recommendations, including a downward adjustment to compensation, were appropriate for the long-term but led to a loss of sales representatives and revenues, resulting in OER's inability to make timely debt service payments to CIBC in 2019.

In the second half of 2019, OER retained the services of Greg Paulus (who currently serves as OER's chief restructuring officer) to assist in a review of OER's financial operations, but the business was unable to turn itself around sufficiently to meet its obligations to CIBC in a manner satisfactory to CIBC. After several forbearance periods had expired, CIBC determined to foreclose on its collateral pursuant to Article 9 of the Illinois Uniform Commercial Code and scheduled a foreclosure sale for March 30, 2021. The aggregate balance of the CIBC loans at the time was approximately $3.8 million. The sale contemplated a private sale to a third-party buyer for $1 million, subject to a condition in the purchase agreement that the buyer enter into employment agreements with the Zaimis.

As the foreclosure sale date approached, the Zaimis became concerned that the new entity they would be managing for the prospective buyer in the CIBC foreclosure sale would not be adequately capitalized. Consequently, they determined that the best results for secured and unsecured creditors would be achieved through confirmation of a subchapter V chapter 11 reorganization plan that fairly adjusts OER's obligations to creditors in accordance with applicable bankruptcy law and gives unsecured creditors substantially more than they would have received had the foreclosure sale been consummated.

For this reason, OER filed a chapter 11 petition for relief on March 26, 2021. No creditors' committee, chapter 11 trustee, or examiner has been appointed in this Case. Pursuant to Bankruptcy Code section 1183, Neema T. Varghese was appointed the Subchapter V Trustee for this Case.

The Debtor has attempted to refinance existing debt owed to CIBC and obtain an additional working capital line from a new lender. To that end, the Debtor's chief restructuring officer ("CRO") contacted 14 lenders either familiar with the Debtor's business or known to the CRO for their willingness to provide exit financing to a chapter 11 debtor. No concrete proposals for such comprehensive exit financing have developed to date, though the Debtor remains receptive to such discussions with interested lenders. The Projections assume that no such exit financing facility will be procured in advance of—or after—Confirmation.

With nearly 80% of the Debtor's approximately $6 million in liabilities having been personally guaranteed by the Zaimis, the Zaimis filed their own personal joint chapter 7 petition for relief with the Bankruptcy Court on April 30, 2021 (Case No. 21-05779) (the "Zaimis' Individual Case"). The Zaimi Individual Case was assigned to Judge Baer as a case "related" to OER's.

## 1.2    Liquidation Analysis

Pursuant to Bankruptcy Code section 1129(a)(7), in order for this Plan to be confirmed, each creditor must either have voted to accept this Plan (or be deemed to have accepted this Plan), or this Plan must provide for each Holder of an Allowed Claim to receive at least as much as it would as of the Effective Date if the Debtor were liquidated under Chapter 7 on such date. A liquidation analysis is set forth in **Exhibit C** to this Plan (the "Liquidation Analysis").

Section 1129(a)(7) is satisfied because this Plan provides for holders of Allowed Secured Claims and Allowed General Unsecured Claims to receive amounts that are materially greater than

the amount such creditors would be expected to receive in a hypothetical chapter 7 liquidation. In a hypothetical chapter 7 liquidation, Holders of Allowed General Unsecured Claims would receive nothing.

**1.3    Ability to Make Future Plan Payments and Operate Without the Need for Further Reorganization.**

In order for the Court to confirm this Plan, the Debtor must demonstrate that it will have enough cash over the life of the Plan to make the payments required hereunder and operate its business. With the assistance of its chief restructuring officer, the Debtor developed the projections shown in **Exhibit B** to this Plan (the "Projections"). The Projections demonstrate the feasibility of the Debtor's Plan based on its projected operating cash flow projections and its ability to fairly and equitably satisfy Allowed Claims entitled to distributions under the Plan.

**1.4    Summary of the Plan**

This Plan proposes to pay creditors from the cash flows generated by future operations. This Plan specifically provides for:

- 20 Classes of Secured Claims (including subclasses)
- 1 Class of General Unsecured Claims
- 1 Class of Equity

Allowed Secured Claims in Class 1 subclasses represented by purchase money security interests will receive their normal monthly payment due starting September 1, 2021, with any monthly amounts past due as of August 31, 2021 to be tacked on to the end of the term and then paid monthly without penalty or additional interest.

Holders of Allowed General Unsecured Claims will receive Pro Rata distributions from the aggregate Projected Disposable Income as set forth in the Projections. While a precise recovery amount to Holders of Allowed General Unsecured Claims cannot be ascertained with precision at this time until all Disputed Claims are resolved, the Debtor currently projects that Holders of Allowed General Unsecured Claims will recover approximately 27.11% on their Allowed General Unsecured Claims over the five-year term of this Plan.

As the Debtor has been paying its postpetition expenses in the ordinary course, and no reclamation or similar claims have been asserted against the Debtor, projected Administrative Claims are estimated at $0.00.

The Plan provides that Allowed Professional Fee Claims (excluding the Subchapter V Trustee) will be paid over a ten-month period following their date of allowance and that Priority Tax Claims will be paid within five-year period following the Petition Date. All payments under the Plan are to be made directly by the Debtor to the holders of Allowed Claims.

No Distribution shall be made on account of any Claim or Interest which is not an Allowed Claim or Allowed Interest until such Claim or Interest becomes an Allowed Claim or Allowed Interest pursuant to a Final Order. In accordance with section 1123(a)(1) of the Bankruptcy Code,

Administrative Claims, Professional Compensation Claims, and Priority Tax Claims are not classified under the Plan.

All Creditors should refer to the remainder of this Plan for information regarding the precise treatment of their respective Claims. Consistent with 11 U.S.C. § 1187(c), the Debtor has not submitted a separate disclosure statement in connection with this Plan.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE 2
## DEFINITIONS, RULES OF INTERPRETATION, CONSTRUCTION OF TERMS

All capitalized terms not defined elsewhere in the Plan shall have the meanings assigned to them in the Glossary of Defined Terms attached as Exhibit A hereto. Any capitalized term used in the Plan that is not defined herein has the meaning ascribed to that term in the Bankruptcy Code and/or Bankruptcy Rules.

For purposes of the Plan, any reference in the Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, supplemented, or otherwise modified. All exhibits are incorporated into and are a part of this Plan as if set forth in full herein.

The words "herein," "hereof" and "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan, unless the context requires otherwise. Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine, and the neuter.

The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

Captions and headings to articles, sections and exhibits are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan.

The rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE 3
## DESIGNATION OF CLAIMS AND INTERESTS

### 3.1   Identification of Classes; Impaired Classes Entitled to Vote

(a)   <u>Classification and Treatment Generally</u>. Pursuant to sections 1122, 1123 and 1190 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests, which

are placed in a particular Class for all purposes under the Plan, including, without limitation, voting, confirmation, and receiving distributions under the Plan, as set forth herein. In accordance with section 1123(a)(1) of the Bankruptcy Code, Claims arising under sections 507(a)(2) or 507(a)(8) of the Bankruptcy Code are not classified and their treatment is set forth in Article 4.

(b)     Classified Claims and Interests and Entitlement to Vote: The following is a designation of the classes of Claims and Interests under the Plan. Only Impaired Classes are entitled to vote to accept or reject the Plan.

| Class | Claimant | Status | Estimated Aggregate Allowed Amount of Claims / Interests | Percent Recovery on Allowed Class Claim |
|---|---|---|---|---|
| Class 1.1 | Bank of the West | Secured - Impaired (Entitled to Vote) | $ 8,878.20 | 100% |
| Class 1.2 | CE Capital | Secured - Impaired (Entitled to Vote) | $ 32,072.88 | 100% |
| Class 1.3 | Beacon Funding | Secured - Impaired (Entitled to Vote) | $ 62,939.49 | 100% |
| Class 1.4 | Blue Bridge Financial | Secured - Impaired (Entitled to Vote) | $ 22,627.80 | 100% |
| Class 1.5 | CarMax Auto Finance | Secured - Impaired (Entitled to Vote) | $ 22,694.32 | 100% |
| Class 1.6A | CIBC Bank N.A. – Section 7(a) Loan | Secured - Impaired (Entitled to Vote) | $ 1,200,000 | 100% |
| Class 1.6B | CIBC Bank N.A. – SBA Express Loan | Secured - Impaired (Entitled to Vote) | $ 300,000 | 100% |
| Class 1.7A | De Lage Landen Financial Services | Secured - Impaired (Entitled to Vote) | $ 33,204.20 | 100% |
| Class 1.7B | De Lage Landen Financial Services | Secured - Impaired (Entitled to Vote) | $ 56,082.32 | 100% |
| Class 1.7C | De Lage Landen Financial Services | Secured - Impaired (Entitled to Vote) | $ 41,594.24 | 100% |
| Class 1.7D | De Lage Landen Financial Services | Secured - Impaired (Entitled to Vote) | $ 27,142.40 | 100% |

| Class 1.8 | Financial Pacific Leasing | Secured - Impaired (Entitled to Vote) | $ 16,852.56 | 100% |
|---|---|---|---|---|
| Class 1.9 | HYG Financial Services | Secured - Impaired (Entitled to Vote) | $ 25,129.11 | 100% |
| Class 1.10 | M2 Lease Funds | Secured - Impaired (Entitled to Vote) | $ 28,255.60 | 100% |
| Class 1.11A | Toyota Commercial Finance | Secured - Impaired (Entitled to Vote) | $ 55,980.61 | 100% |
| Class 1.11B | Toyota Commercial Finance | Secured - Impaired (Entitled to Vote) | $ 61,502.01 | 100% |
| Class 1.11C | Toyota Commercial Finance | Secured - Impaired (Entitled to Vote) | $ 30,528.47 | 100% |
| Class 1.11D | Toyota Industries Commercial Finance | Secured - Impaired (Entitled to Vote) | $ 6,276.32 | 100% |
| Class 1.12 | US Bank Equipment Finance | Secured - Impaired (Entitled to Vote) | $ 97,343.92 | 100% |
| Class 1.13 | Wells Fargo Bank | Secured - Impaired (Entitled to Vote) | $ 9,514.52 | 100% |
| Class 1.14 | Other Secured Claims | Unsecured – Impaired (Not Entitled to Vote as Secured Creditor) | $0.00 | 0% |
| Class 2 | General Unsecured claims | Impaired (Entitled to Vote) | $ 3,965,546 | 27% |
| Class 3 | LLC Member Interests in Debtor | Unimpaired (Deemed Acceptance) | N/A | 100% |
| Class 4 | Zaimi Estate Claims | Impaired | (Settlement) | N/A |

(c)     Unclassified Claims and Interests: In accordance with section 1123(a)(1) of the Bankruptcy Code, Allowed Administrative Expense Claims (including Professional Fee Claims) and Allowed Tax Claims are not classified and are excluded from the Classes designated in this Article 3 of the Plan. The treatment accorded Allowed Administrative Expense Claims, Professional Fee Claims, and Allowed Priority Tax Claims is set forth in Article 4 of the Plan.

(d)

| Unclassified Claims | Plan Treatment | Estimated Aggregate Claims | Percent Recovery |
|---|---|---|---|
| Administrative Claims[1] | Unimpaired | $ 0.00 | 100% |
| Professional Fee Claims | Unimpaired | $ 185,000 | 100% |
| Tax Claims | Unimpaired | $ 113,021 | 100% |

### 3.2   Unimpaired Classes Deemed to Accept Plan

The Plan classifies the following unimpaired Interests that are not entitled to vote on the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of an Interest in Class 3 (LLC Member Interests) is conclusively presumed to have accepted the Plan in respect of such Interests and is not entitled to vote on the Plan.

### 3.3   Controversy Concerning Classification, Impairment or Voting Rights

Any controversy or dispute related to the classification, impairment or voting rights of any Creditor or Interest Holder under the Plan must be determined by the Bankruptcy Court after notice and a hearing prior to the Confirmation Hearing. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes: (i) the amount of any contingent or unliquidated Claim, the fixing or liquidation of, as the case may be, would unduly delay the administration of the Bankruptcy Case; and (ii) any right to payment arising from an equitable remedy for breach of performance.

### ARTICLE 4
### TREATMENT OF UNCLASSIFIED CLAIMS

### 4.1   Administrative Expense Claims

(a)   <u>Generally</u>: Except to the extent the Holder agrees to other, lesser treatment, and except in respect of Ordinary Course Liabilities and Cure Amounts, each Holder of an Allowed Administrative Claim shall be paid cash in respect of such Claim in three equal bi-monthly installments commencing on October 1, 2021. As the Debtor has been paying its postpetition

---

[1]   Excludes Ordinary Course Liabilities (see Section 5.2 herein) and "Cure Amounts" required to cure any default under an Assumed Contract for regular monthly payments due through the September 1, 2021 Plan Effective (see **Exhibit D** hereto)

expenses in the ordinary course, and no reclamation or similar claims have been asserted against the Debtor, projected Administrative Claims are estimated at $0.00. The payment of an Allowed Administrative Expense Claim pursuant to this Section 4.1 shall be in full satisfaction, settlement release and discharge of, and in exchange for such Allowed Administrative Expense Claim. The Administrative Claim Bar Date is August 20, 2021.

(b)     Professionals: Except to the extent a Professional agrees to other, lesser treatment, all Professionals or other Persons requesting compensation or reimbursement of expenses from the Debtor pursuant to Sections 327, 328, 330, 331, 503(b) and 1102 of the Code shall be paid cash, in respect of such Claim, in ten equal monthly installments commencing on or about the third business day following the allowance of such Claims by the Court after notice and hearing; provided, however, that the Allowed Professional Fee Claims of the Subchapter V Trustee shall be paid within three business days of allowance by the Court. Projected fee claims of the Subchapter V Trustee are not expected to exceed $20,000. Other projected Professional Fee Claims, representing the projected fees for Debtor's counsel, are not expected to exceed approximately $165,000. Debtor's counsel has not received any payments for the postpetition period and did not have any retainer balance on hand as of the Petition Date.

## 4.2     Ordinary Course Liabilities

A Holder of an Ordinary Course Liability is not required to file or serve any request for payment of the Ordinary Course Liability. The Debtor shall continue to pay each Ordinary Course Liability accrued but not yet due and payable as of the Effective Date pursuant to the payment terms and conditions of the particular transaction giving rise to the Ordinary Course Liability.

## 4.3     Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim shall receive 54 equal monthly installments over a period of 54 consecutive months following the Plan Effective Date, with the first such payment commencing on October 1, 2021. Projected Allowed Tax Claims as of the Effective Date total $113,021.47.

The payments provided hereunder in respect of Allowed Tax Claims shall be in full satisfaction, settlement, release, and discharge of, and in exchange for, such Claims.

## ARTICLE 5
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

## 5.1     Class 1 Secured Claims:

Class 1 consists of all Allowed Secured Claims against the Debtor, with each such Claim in its own separate designated subclass within Class 1. Pursuant to the Bankruptcy Court's order of March 30, 2021, the deadline for any Holder of a Secured Claim to make an election under 11

U.S.C. § 1111(b) was June 8, 2021. No such elections were made by any Holder of a Secured Claim.

The proposed treatment each Allowed Secured Claim is set forth in the table that follows:

| Class | Claimant | Status |
|---|---|---|
| 1.1 | Bank of the West | The Holder of the Class 1.1 Secured Claim shall be deemed to hold an Allowed Class 1.1 Secured Claim in the amount of $8,878.20 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 30 months, the Reorganized Debtor shall pay the Holder of the Class 1.1 Allowed Secured Claim $286.39.<br><br>Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.1 Secured Claim shall continue to secure the Allowed Class 1.1 Secured Claim. Upon payment of all amounts due and owing on account of the Allowed Class 1.1 Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.1 Secured Claim and all Liens on property securing the Allowed Class 1.1 Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.2 | CE Capital | The Holder of the Class 1.2 Secured Claim shall be deemed to hold an Allowed Class 1.2 Secured Claim in the amount of $32,072.88 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 12 months, the Reorganized Debtor shall pay the Holder of the Class 1.2 Allowed Secured Claim $2,467.14.<br><br>Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.2 Secured Claim shall continue to secure the Allowed Class 1.2 Secured Claim. Upon payment of all amounts due and owing on account of the Allowed Class 1.2 Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.2 Secured Claim and all Liens on property securing the Allowed Class 1.2 Secured Claim shall thereupon be automatically deemed terminated and released. |

| 1.3 | Beacon Funding | The Holder of the Class 1.3 Secured Claim shall be deemed to hold an Allowed Class 1.3 Secured Claim in the amount of $62,939.49 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 44 months, the Reorganized Debtor shall pay the Holder of the Class 1.3 Allowed Secured Claim $1,398.66.<br><br>Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.3 Secured Claim shall continue to secure the Allowed Class 1.3 Secured Claim. Upon payment of all amounts due and owing on account of the Allowed Class 1.3 Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.3 Secured Claim and all Liens on property securing the Allowed Class 1.3 Secured Claim shall thereupon be automatically deemed terminated and released. |
| --- | --- | --- |
| 1.4 | Blue Bridge Financial | The Holder of the Class 1.4 Secured Claim shall be deemed to hold an Allowed Class 1.4 Secured Claim in the amount of $22,627.80 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 4 months, the Reorganized Debtor shall pay the Holder of the Class 1.4 Allowed Secured Claim $4,525.54.<br><br>Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.4 Secured Claim shall continue to secure the Allowed Class 1.4 Secured Claim. Upon payment of all amounts due and owing on account of the Allowed Class 1.4 Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.4 Secured Claim and all Liens on property securing the Allowed Class 1.4 Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.5 | CarMax Auto Finance | The Holder of the Class 1.5 Secured Claim shall be deemed to hold an Allowed Class 1.5 Secured Claim in the amount of $22,694.32 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 33 months, the Reorganized Debtor shall pay the Holder of the Class 1.5 Allowed Secured Claim $667.48.<br><br>Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.5 Secured Claim shall continue to secure the Allowed Class 1.5 Secured Claim. Upon |

| | | |
|---|---|---|
| | | payment of all amounts due and owing on account of the Allowed Class 1.5 Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.5 Secured Claim and all Liens on property securing the Allowed Class 1.5 Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.6A | CIBC Bank N.A. – Section 7(a) Loan | The Holder of the Class 1.6A Secured Claim shall be deemed to hold an Allowed Class 1.6A Secured Claim in the amount of $1,200,000 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 59 months, the Reorganized Debtor shall pay the Holder of the Class 1.6A Allowed Secured Claim $23,060.12.<br><br>Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.6A Secured Claim shall continue to secure the Allowed Class 1.6A Secured Claim; *provided, however,* that the Debtor shall be permitted to use the proceeds from the sale or disposition of assets upon which the Holder of the Allowed Class 1.6A Secured Claim has a Lien to acquire replacement assets or to make payments under the Plan. Commencing on September 1, 2021, and every two weeks thereafter for the next succeeding 59 months, the Debtor shall deliver to the Holder of the Class 1.6A Secured Claim a collateral report indicating particular assets during the previous two-week period that were sold, the proceeds of such sales, the use or intended use of such proceeds, and indicating what, if any, new assets were acquired. The Liens on property securing the Allowed Class 1.6A Secured Claim shall attach to all proceeds and replacement assets and be deemed perfected thereon upon the delivery of such proceeds and replacement assets to the Debtor. Upon payment of all amounts due and owing on account of the Allowed Class 1.6A Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.6A Secured Claim and all Liens on property securing the Allowed Class 1.6A Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.6B | CIBC Bank N.A. – SBA Express Loan | The Holder of the Class 1.6B Secured Claim shall be deemed to hold an Allowed Class 1.6B Secured Claim in the amount of $300,000.00 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 59 months, the Reorganized Debtor shall pay the Holder of the Class 1.6B Allowed Secured Claim $5,695.80. |

| | | |
|---|---|---|
| | | Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.6B Secured Claim shall continue to secure the Allowed Class 1.6B Secured Claim; *provided, however,* that the Debtor shall be permitted to use the proceeds from the sale or disposition of assets upon which the Holder of the Allowed Class 1.6B Secured Claim has a Lien to acquire replacement assets or to make payments under the Plan. Commencing on September 1, 2021, and every two weeks thereafter for the next succeeding 59 months, the Debtor shall deliver to the Holder of the Class 1.6B Secured Claim a collateral report indicating particular assets during the previous two-week period that were sold, the proceeds of such sales, the use or intended use of such proceeds, and indicating what, if any, new assets were acquired. The Liens on property securing the Allowed Class 1.6B Secured Claim shall attached to all proceeds and replacement assets and be deemed perfected thereon upon the delivery of such proceeds and replacement assets to the Debtor. Upon payment of all amounts due and owing on account of the Allowed Class 1.6B Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.6B Secured Claim and all Liens on property securing the Allowed Class 1.16B Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.7A | De Lage Landen Financial Services | The Holder of the Class 1.7A Secured Claim shall be deemed to hold an Allowed Class 1.7A Secured Claim in the amount of $33,204.20 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 8 months, the Reorganized Debtor shall pay the Holder of the Class 1.7A Allowed Secured Claim $3,689.36. <br><br> Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.7A Secured Claim shall continue to secure the Allowed Class 1.7A Secured Claim. Upon payment of all amounts due and owing on account of the Allowed Class 1.7A Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.7A Secured Claim and all Liens on property securing the Allowed Class 1.7A Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.7B | De Lage Landen Financial Services | The Holder of the Class 1.7B Secured shall be deemed to hold an Allowed Class 1.7B Secured Claim in the amount of $56,082.32 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 42months, the Reorganized |

| | | |
|---|---|---|
| | | Debtor shall pay the Holder of the Class 1.7B Allowed Secured Claim $1,304.24.<br><br>Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.7B Secured Claim shall continue to secure the Allowed Class 1.7B Secured Claim. Upon payment of all amounts due and owing on account of the Allowed Class 1.7B Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.7B Secured Claim and all Liens on property securing the Allowed Class 1.7B Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.7C | De Lage Landen Financial Services | The Holder of the Class 1.7C Secured Claim shall be deemed to hold an Allowed Class 1.7C Secured Claim in the amount of $41,594.24 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 32 months, the Reorganized Debtor shall pay the Holder of the Class 1.7C Allowed Secured Claim $1,260.43.<br><br>Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.7C Secured Claim shall continue to secure the Allowed Class 1.7C Secured Claim. Upon payment of all amounts due and owing on account of the Allowed Class 1.7C Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.7C Secured Claim and all Liens on property securing the Allowed Class 1.7C Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.7D | De Lage Landen Financial Services | The Holder of the Class 1.7D Secured Claim shall be deemed to hold an Allowed Class 1.7D Secured Claim in the amount of $27,142.40 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 38 months, the Reorganized Debtor shall pay the Holder of the Class 1.7D Allowed Secured Claim $695.96.<br><br>Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.7D Secured Claim shall continue to secure the Allowed Class 1.7D Secured Claim. Upon payment of all amounts due and owing on account of the Allowed Class 1.7D Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.7D Secured Claim and all Liens on property securing the Allowed Class |

| | | |
|---|---|---|
| | | 1.7D Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.8 | Financial Pacific Leasing | The Holder of the Class 1.8 Secured Claim shall be deemed to hold an Allowed Class 1.8 Secured Claim in the amount of $16,852.56 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 10 months, the Reorganized Debtor shall pay the Holder of the Class 1.8 Allowed Secured Claim $1,532.05.<br><br>Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.8 Secured Claim shall continue to secure the Allowed Class 1.8 Secured Claim. Upon payment of all amounts due and owing on account of the Allowed Class 1.8 Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.8 Secured Claim and all Liens on property securing the Allowed Class 1.8 Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.9 | HYG Financial Services | The Holder of the Class 1.94 Secured Claim shall be deemed to hold an Allowed Class 1.9 Secured Claim in the amount of $23,707.71 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 50 months, the Reorganized Debtor shall pay the Holder of the Class 1.9 Allowed Secured Claim $464.84.<br><br>Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.9 Secured Claim shall continue to secure the Allowed Class 1.9 Secured Claim. Upon payment of all amounts due and owing on account of the Allowed Class 1.9 Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.9 Secured Claim and all Liens on property securing the Allowed Class 1.9 Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.10 | M2 Lease Funds | The Holder of the Class 1.10 Secured Claim shall be deemed to hold an Allowed Class 1.10 Secured Claim in the amount of $28,255.60 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 7 months, the Reorganized Debtor shall pay the Holder of the Class 1.10 Allowed Secured Claim $3,531.95.<br><br>Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.10 Secured Claim shall |

| | | |
|---|---|---|
| | | continue to secure the Allowed Class 1.10 Secured Claim. Upon payment of all amounts due and owing on account of the Allowed Class 1.10 Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.10 Secured Claim and all Liens on property securing the Allowed Class 1.10 Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.11A | Toyota Commercial Finance | The Holder of the Class 1.11A Secured Claim shall be deemed to hold an Allowed Class 1.11A Secured Claim in the amount of $55,980.61 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 57 months, the Reorganized Debtor shall pay the Holder of the Class 1.11A Allowed Secured Claim $1,106.67. <br><br> Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.11A Secured Claim shall continue to secure the Allowed Class 1.11A Secured Claim. Upon payment of all amounts due and owing on account of the Allowed Class 1.11A Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.11A Secured Claim and all Liens on property securing the Allowed Class 1.11A Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.11B | Toyota Commercial Finance | The Holder of the Class 1.11B Secured Claim shall be deemed to hold an Allowed Class 1.11B Secured Claim in the amount of $61,502.01 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 41 months, the Reorganized Debtor shall pay the Holder of the Class 1.11B Allowed Secured Claim $1,597.72. <br><br> Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.11B Secured Claim shall continue to secure the Allowed Class 1.11B Secured Claim. Upon payment of all amounts due and owing on account of the Allowed Class 1.11B Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.11B Secured Claim and all Liens on property securing the Allowed Class 1.11B Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.11C | Toyota Commercial Finance | The Holder of the Class 1.11C Secured Claim shall be deemed to hold an Allowed Class 1.11C Secured Claim in the amount of $30,528.47 as of August 31, 2021. Commencing on September 1, |

| | | |
|---|---|---|
| | | 2021, and on the first business day of the next succeeding 41 months, the Reorganized Debtor shall pay the Holder of the Class 1.11C Allowed Secured Claim $793.07.<br><br>Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.11C Secured Claim shall continue to secure the Allowed Class 1.11C Secured Claim. Upon payment of all amounts due and owing on account of the Allowed Class 1.11C Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.11C Secured Claim and all Liens on property securing the Allowed Class 1.11C Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.11D | Toyota Industries Commercial Finance | The Holder of the Class 1.11D Secured Claim shall be deemed to hold an Allowed Class 1.11D Secured Claim in the amount of $6,276.32 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 9 months, the Reorganized Debtor shall pay the Holder of the Class 1.11D Allowed Secured Claim $578.24.<br><br>Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.11D Secured Claim shall continue to secure the Allowed Class 1.11D Secured Claim. Upon payment of all amounts due and owing on account of the Allowed Class 1.11D Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.11D Secured Claim and all Liens on property securing the Allowed Class 1.11D Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.12 | US Bank Equipment Finance | The Holder of the Class 1.12 Secured Claim shall be deemed to hold an Allowed Class 1.12 Secured Claim in the amount of $97,343.92 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 26 months, the Reorganized Debtor shall pay the Holder of the Class 1.14 Allowed Secured Claim $3,605.33.<br><br>Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.12 Secured Claim shall continue to secure the Allowed Class 1.12 Secured Claim. Upon payment of all amounts due and owing on account of the Allowed Class 1.12 Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.12 Secured Claim and all Liens on property securing the Allowed Class |

| | | |
|---|---|---|
| | | 1.12 Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.13 | Wells Fargo Bank | The Holder of the Class 1.13 Secured Claim shall be deemed to hold an Allowed Class 1.13 Secured Claim in the amount of $9,514.52 as of August 31, 2021. Commencing on September 1, 2021, and on the first business day of the next succeeding 30 months, the Reorganized Debtor shall pay the Holder of the Class 1.13 Allowed Secured Claim $306.92. |
| | | Notwithstanding any other provision in the Plan, the Liens on property securing the Allowed Class 1.13 Secured Claim shall continue to secure the Allowed Class 1.13 Secured Claim. Upon payment of all amounts due and owing on account of the Allowed Class 1.13 Secured Claim, the Reorganized Debtor shall be deemed released and discharged from all Claims or Rights of Action against the Reorganized Debtor on account of such Allowed Class 1.13 Secured Claim and all Liens on property securing the Allowed Class 1.13 Secured Claim shall thereupon be automatically deemed terminated and released. |
| 1.14 | Other Secured Claims | Class 1.14 consists of all other Secured Claims not classified in any of Classes 1.1 through 1.13 (including subclasses) (the "Other Secured Claims"). Each Secured Claim in Class 1.14 is designated in its own separate subclass within Class 1.14, and includes, without limitation, the $150,000.00 claim of the SBA in connection with its EIDL Loan. |
| | | Each subclass within Class 1.14 is Impaired under the Plan because the Collateral securing each of these Secured Claims has no net equity value after accounting for pre-existing Liens attaching to the Collateral which secures these Class 1.14 Other Secured Claims. Accordingly, all Holders of Class 1.14 Other Secured Claims shall receive no distributions under the Plan on account of their Class 1.14 Other Secured Claims and all amounts due such Creditors shall be classified as unsecured Deficiency Claims that are entitled to the same treatment afforded to other Class 2 General Unsecured Claims under the Plan. |

## 5.2  Class 2: General Unsecured Claims

(a)  Classification: Class 2 consists of all General Unsecured Claims arising or deemed by law or under the Bankruptcy Code to have arisen on or before the Petition Date, including all Claims of Holders of Class 1.14 Other Secured Claims (all of which represent unsecured Deficiency Claims owing to the Holders of such Claims).

(b)    Treatment: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder shall, in exchange for full and final satisfaction of such Claim, receive its Pro Rata portion of the Projected Disposable Income within five (5) years following the Effective Date, without interest. The Reorganized Debtor shall make annual payments to Holders of Class 2 General Unsecured Claims on a Pro Rata basis commencing on August 31, 2024 according to the following schedule; *provided*, *however*, that failure to timely pay these annual amounts according to this schedule shall not be a default under the Plan and no default in respect of payments of Projected Disposable Income to Class 2 Creditors shall exist unless total distributions to Class 2 through and including August 31, 2026 shall not have equaled the Projected Disposable Income amount of $1,075,102. Included in the total projected aggregate Class 2 General Unsecured Claims of $ 3,965,546 is the single Deficiency Claim of CIBC in the amount of $2,323,854.71 (or 58.6% of all projected Allowed Class 2 General Unsecured Claims).

| Fiscal Year Ending | Projected Payments During Fiscal Year | Estimated Cumulative Class 2 Recovery Percentage |
|---|---|---|
| August 31, 2022 | $0.00 | 0.00% |
| August 31, 2023 | $0.00 | 0.00% |
| August 31, 2024 | $ 201,844 | 5.09% |
| August 31, 2025 | $ 536,660 | 13.53% |
| August 31, 2026 | $ 336,598 | 8.49% |
| TOTALS | $1,075,102 | 27.11% |

At the discretion of the Reorganized Debtor, the Projected Disposable Income payable to Holders of Allowed Class 2 Claims may be distributed more quickly than set forth herein if cash flow is available. Upon payment of the entire Projected Disposable Income amount to Class 2, all obligations to Class 2 General Unsecured Creditors under this Plan shall be deemed fully satisfied.

**5.3    Class 3: LLC Member Interests**

(a)    Classification: Class 3 consists of all LLC Member Interests in the Debtor, all of which are titled in the name of OER's managers, Ali R. Zaimi and April Zaimi (the "Zaimis").

(b)    Treatment: Class 3 is Unimpaired and all Holders of Class 3 LLC Member Interests are conclusively deemed to have accepted the Plan and are not entitled to vote on the Plan. All Liens, charges, rights, claims, or challenges of any Creditor or other Person with notice of the Confirmation Hearing to the retention by the Zaimis of their Class 3 LLC Member Interests free and clear of all Liens, claims, rights, and encumbrances of any kind shall be deemed released, discharged, and terminated as of the Effective Date.

### 5.4     Class 4: Zaimi Estate Claims

In their petition, the Zaimis declared their Class 3 LLC Member Interests to be exempt from inclusion in the Zaimi Estate under applicable bankruptcy and Illinois law because these Interests had no value as of the April 30, 2021 filing date for their joint chapter 7 petition. The chapter 7 trustee appointed as the fiduciary over the property of the chapter 7 estate of the Zaimis ("the Zaimi Trustee") in the Zaimis' Individual Case alleges that the Class 3 LLC Member Interests had value to the Zaimis and that the proposed exemption was improper. Among other things, the Zaimi Trustee contended that the value to an equity holder of the retention of equity in a Subchapter V case was not necessarily limited to the distributable income proposed to fund plan payments, at least under the facts presented in these related cases.

Regardless of how the matter would ultimately be resolved by the Bankruptcy Court, an open dispute over this issue would have significantly delayed Confirmation and, at a minimum, increased the Professional Fees charged to OER were the Bankruptcy Court called upon to conduct an evidentiary hearing on whether the Class 3 Interests had value as of April 30, 2021.

In addition, to enable vehicles used in OER's operations to be financed at more favorable rates than available to OER, two of these vehicles (the "2018 GMC Sierra" and the "2021 Kia Telluride") were titled in the names of Ali or April Zaimi and one was titled jointly in the names of OER and April Zaimi (the "2017 Dodge RAM") (collectively, the "Vehicles"). Because these Vehicles were historically used in connection with OER's business, OER would make the monthly payments due to the companies that financed the acquisition of these vehicles. Based on current cash offers received by the Zaimi Trustee, OER and the Zaimi Trustee agree that there is $34,000 of net equity value in these vehicles. The Zaimi Trustee has proposed to move to sell these vehicles in order to cash out this net equity value for the benefit of the Zaimi Estate, but such action would place OER at a competitive disadvantage as it would have no vehicles upon which it currently relies for movement of equipment or people.

In addition, according to the Debtor's books and records, the Debtor and the Zaimi Estate have offsetting claims. OER's financial statements indicate that the Zaimis owe OER approximately $331,173 on account of deferred compensation treated as a loan for tax purposes, and that the Zaimi Estate has a claim against OER for $43,896 based on "shareholder loans" to OER. The Zaimis themselves indicated in their chapter 7 petition that they may have a claim against OER of up to $265,064.89 for "advances" made to the company. The nature and amount of these offsetting claims remain unreconciled and in dispute.

To resolve and settle all these issues of one estate against the other, the Debtor proposes the following comprehensive settlement of the Claims and Interests of the Zaimi Trustee relative to OER and the Zaimis (hereinafter the "Zaimi Trustee Plan Settlement"), and a vote by the Zaimi Trustee in favor of the Plan will constitute its consent thereto, subject to Bankruptcy Court approval of the Zaimi Trustee's authority to enter into this settlement in the Zaimis' Individual Case::

(a)      On September 1, 2021, the Zaimis shall tender $4,800.00 in Cash to the Zaimi Trustee;

(b) On September 1, 2021, and on the first business day of each of the next five succeeding calendar months, OER shall tender $4,950.00 in Cash to the Zaimi Trustee in exchange for a release of all right, title, and interest of the Zaimi Trustee to the Vehicles, but subject to existing liens, claims and encumbrances against such Vehicles, and in exchange, and at the request of CIBC, the Zaimis will reduce their collective monthly salary for the first 24 months following the Plan Effective Date by $708.33 a month and retain ownership of the 2021 Kia Telluride;

(c) On September 1, 2021, and on the first business day of each of the next five succeeding calendar months, OER shall tender $3,833.33 in Cash to the Zaimi Trustee in exchange for a release of all right, title, and interest of the Zaimi Trustee to the Class 3 LLC Member Interests, and in exchange, the Zaimis will reduce their collective monthly salary for the first 24 months following the Plan Effective Date by $958.33 a month;

(d) On the Plan Effective Date, all Claims or Causes of Action of the Zaimi Estate against the Debtor or the Reorganized Debtor and all Claims or Causes of Action of the Debtor or the Reorganized Debtor against the Zaimi Estate will be forever released and discharged;

(e) In their chapter 7 case, the Zaimis will obtain Bankruptcy Court approval for reaffirmation under Bankruptcy Code section 524 of their obligations to the entities that financed their acquisition of the Vehicles (the "Zaimi Reaffirmations"); and

(f) On the Plan Effective Date, the Zaimis will assign to the Reorganized Debtor all of their respective right, title, and interest in and to any equity in the Vehicles represented by the GMC Sierra and the Dodge RAM, and this equity in the Vehicles shall serve as additional Collateral for the Secured Claims owing to CIBC on account of its Class 1.6A and Class 1.6B Allowed Secured Claims.

## ARTICLE 6
## MEANS FOR IMPLEMENTATION OF THE PLAN; EFFECT OF CONFIRMATION

### 6.1 Continued Corporate Existence and Management

Except as otherwise provided in the Plan, the Reorganized Debtor will continue to exist after the Effective Date as a corporate entity, with all of the powers of a limited liability company under applicable law in the jurisdiction in which the Debtor is incorporated. The Reorganized

Debtor shall have the following members and managers on the Effective Date: Ali R. Zaimi and April Zaimi. Ali Zaimi shall be designated the President of the Reorganized Debtor.

### 6.2    Plan Funding

It is expected that all distributions under this Plan will be funded from the Reorganized Debtor's earnings and made by the Reorganized Debtor in accordance with the requirements of Articles 4 and 5 of this Plan.

In accordance with Bankruptcy Code section 1190(2), the Reorganized Debtor is prepared to submit future earnings and other income to the supervision and control of the Subchapter V Trustee if the Plan is ultimately confirmed under Section 1191(b), but the Debtor will do so only to the extent necessary to execute this Plan and only to the extent required by the Bankruptcy Court in its Confirmation Order.

### 6.3    Post-Effective Date Rights and Operations

The Reorganized Debtor, among other things, may: (a) sell, lease, license, and/or dispose of any of the assets in the ordinary course of business (other than the Rights of Action); (b) institute, prosecute, settle, compromise, abandon or release all Rights of Action; (c) prosecute objections to Claims filed against the Debtors; (d) make distributions to the Holders of allowed Claims in accordance with the Plan; (e) perform administrative services related to the implementation of the Plan, including filing or recording such documents as are necessary or in furtherance of the release of any Lien to the extent such Lien is released or deemed released in or under the Plan; and (f) employ attorneys and other professionals, to assist in fulfilling the Reorganized Debtor's obligations under the Plan and the Bankruptcy Code.

### 6.4    Preservation of Rights of Action

The Reorganized Debtor shall retain and shall have the exclusive right to enforce any and all Rights of Action. Unless any Claims against a Person are expressly waived, relinquished, exculpated, released, compromised, transferred or settled in the Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue any and all Retained Rights of Action, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute or settle such Rights of Action shall be preserved notwithstanding the occurrence of the Effective Date, including, without limitation, those Retained Rights of Action in **Exhibit E** to the Plan.

### 6.5    Cancellation and Surrender of Instruments, Securities, and Other Documentation

On the Effective Date, except as otherwise expressly provided in the Plan, all instruments, securities, and other documentation or agreements representing or giving rise to Claims against or Interests in the Debtor (including any rights to acquire Interests in the Debtor) shall be deemed canceled and of no further force or effect, without any further action on the part of the Bankruptcy Court or any Person. The Holders of such canceled instruments, securities, and other

documentation shall have no rights arising from or relating to such instruments, securities, or other documentation.

## ARTICLE 7
## PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND EQUITY INTERESTS AND DISTRIBUTIONS OF PROPERTY UNDER THE PLAN

### 7.1   Right to Object to Claims

The Reorganized Debtor shall examine all Claims and will have the right, authority, power, and discretion to: (i) file objections to the allowance, priority, and classification of all Claims; (ii) litigate to judgment, settle, or withdraw objections to Claims without any notice or approval of any other party or the Bankruptcy Court; and (iii) request that the Bankruptcy Court estimate any claim pursuant to 11 U.S.C. § 502(c). The deadline to file objections to Claims shall be sixty (60) days after the Effective Date, which date may be extended by order of the Bankruptcy Court upon proper motion by the Reorganized Debtor.

### 7.2   Distribution Procedures Regarding Allowed Claims

(a)   In General

The Reorganized Debtor shall make all Distributions required to be made under the Plan.

(b)   Distributions on Allowed Claims Only

Distributions shall be made only to the Holders of Allowed Claims. Until a Disputed Claim becomes an Allowed Claim, the Holder of that Disputed Claim shall not receive a Distribution.

(c)   Place and Manner of Payments of Distributions

Except as otherwise specified in the Plan, Distributions shall be made by mailing such Distribution to the Creditor at the address listed in any proof of claim filed by the Creditor or at such other address as such Creditor shall have specified for payment purposes in a written notice received by the Debtor or the Reorganized Debtor at least twenty (20) days before a Distribution Date. If a Creditor has not filed a proof of claim or sent the Debtor or the Reorganized Debtor a written notice of payment address, then the Distribution(s) for such Creditor will be mailed to the address identified in the Schedules of Assets and Liabilities. The Reorganized Debtor shall distribute any Cash by wire, check, or such other method as it deems appropriate under the circumstances. Before receiving any Distributions, all Holders of Allowed Claims entitled to distributions under the Plan shall, at the request of the Debtor or the Reorganized Debtor, provide written notification of their respective Federal Tax Identification Numbers or Social Security Numbers, and failure to comply with this request shall be sufficient grounds for the Reorganized Debtor to suspend Distributions to that Creditor.

(d)   Undeliverable Distributions

If a Distribution made to any Creditor is returned as undeliverable, the Reorganized Debtor shall use reasonable efforts to determine such Creditor's then current address. If the Reorganized

23

Debtor cannot determine, or is not notified of, a Creditor's then current address within six months after the Effective Date, the Distribution reserved for such Creditor shall be deemed an unclaimed Distribution, and Section 7.2(e) of the Plan shall be applicable thereto.

(e)     Unclaimed Distributions

If the current address for a Creditor entitled to a Distribution under the Plan has not been determined within six months after the Effective Date or such Creditor has otherwise not been located or submitted a valid Federal Tax Identification Number or Social Security Number to the Debtor or the Reorganized Debtor, then such Creditor (i) shall no longer be a Creditor and (ii) shall be deemed to have released such Claim, including the right to Distributions on account of such Allowed Claim, to the Reorganized Debtor.

(f)     Withholding

The Reorganized Debtor may at any time withhold from a Distribution to any Person (except the Internal Revenue Service) amounts sufficient to pay any tax or other charge that has been or may be imposed on such Person with respect to the amount distributable or to be distributed under the income tax laws of the United States or of any state or political subdivision or entity by reason of any Distribution provided for in the Plan, whenever such withholding is determined by the Reorganized Debtor to be required by any law, regulation, rule, ruling, directive, or other governmental requirement. The Reorganized Debtor may enter into agreements with taxing or other authorities for the payment of such amounts that may be withheld in accordance with the provisions of this section.

**7.3     Distributions Only On Timely-Filed, Allowed Claims**

No payments of Cash or other consideration of any kind will be made on account of any Disputed Claim until such Claim becomes an Allowed Claim or is deemed to be such for purposes of distribution, and then only to the extent that the Claim becomes, or is deemed to be for distribution purposes, an Allowed Claim. Except as otherwise ordered by the Bankruptcy Court, no payments shall be made on account of Claims filed after the Claims Bar Date or any other applicable bar date for the Filing of Claims against the Debtor.

**ARTICLE 8**
**EXECUTORY CONTRACTS**

**8.1     Assumption of Executory Contracts**

On the Effective Date, all Executory Contracts identified on the Schedule of Assumed Contracts and Unexpired Leases, attached hereto as Exhibit D, shall be deemed assumed by the Reorganized Debtor in the exercise of its sound business judgment. The Debtor may amend the Schedule of Assumed Contracts and Unexpired Leases through the date of the entry of the Confirmation Order. Entry of the Confirmation Order shall constitute approval of the assumption of such Executory Contracts under sections 365 and 1123 of the Bankruptcy Code. Any reference to a "default," "event of default," or "material default" arising under or in connection with an Assumed Contract, which default is caused by a "default," "event of default," or "material default" arising under another contract or agreement that is not the Assumed Contract itself shall mean a

"default," "event of default," or "material default" under that Assumed Contract alone and shall not include or be caused or triggered by any "default," "event of default," or "material default" under arising under another contract or agreement that is not the Assumed Contract itself.

**8.2     Rejection of Executory Contracts**

**All Executory Contracts not identified on the Schedule of Assumed Contracts and Unexpired Leases attached hereto as Exhibit D (or assumed by the Debtor previously) shall be deemed rejected on the Effective Date. Entry of the Confirmation Order shall constitute approval of such rejections under sections 365 and 1123 of the Bankruptcy Code.**

**8.3     Procedures Related to Assumption of Executory Contracts**

The Debtor will determine which Executory Contracts will be assumed and will identify them on the Schedule of Assumed Contracts and Unexpired Leases, attached hereto as **Exhibit D**.

(a)     Establishment of Cure Claim Amounts

The Cure Amounts associated with the assumption of the Executory Contracts pursuant to Section 8.1 of the Plan are specified in the Schedule of Assumed Contracts and Unexpired Leases at **Exhibit D**. Objections to Cure Amount, if any, must have been filed with the Court by August 20, 2021.

(b)     Objection to Disputed Cure Amounts

If an objection to a Disputed Cure Amount has not been resolved by the Bankruptcy Court or agreement of the parties by the Effective Date, the Executory Contract related to such Disputed Cure Amount shall be deemed assumed by the Reorganized Debtor effective on the Effective Date; provided, however, the Reorganized Debtor may revoke an assumption of any such Executory Contract within ten (10) business days after entry of an order by the Bankruptcy Court adjudicating the objection to the Disputed Cure Amount related to the Executory Contract by filing a notice of such revocation with the Bankruptcy Court and serving a copy on the party(ies) whose Executory Contract is rejected. Any Executory Contract identified in a revocation notice shall be deemed rejected retroactively to the Effective Date.

(c)     Payment of Cure Amounts

Cure Amounts for each Executory Contract that has been designated as an Assumed Contract on Exhibit D hereto are those amounts identified on Exhibit D as the amount necessary to cure all monetary defaults (including unpaid amounts through the Plan Effective Date) under the Assumed Contract. The listed cure amounts represent the unpaid balances owed on account of regular monthly payments due under the Assumed Contract through and including the September 1, 2021 Plan Effective Date. Regular monthly payments under the Assumed Contracts will resume on September 1, 2021 and the cure amounts will be repaid to the contract counterparty in four (4) equal monthly installments commencing on September 1, 2021.

(d)    No Admission of Liability

Neither the inclusion nor exclusion of any Executory Contract on the Schedule of Assumed Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtor or any other party that any such contract or unexpired lease is in fact an Executory Contract or that the Debtor has any liability thereunder.

(e)    Reservation of Rights

Nothing in the Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Rights of Action, or other rights of the Debtor under any executory or non-executory contract or any unexpired or expired lease, nor shall any provision of the Plan increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor under any such contract or lease.

**8.4    Rejection Claim Bar Date**

Each Claim resulting from the rejection of an Executory Contract pursuant to Section 8.2 of the Plan shall be filed with the Bankruptcy Court no later than the September 30, 2021. Any Claim resulting from the rejection of an Executory Contract not Filed by the applicable deadline shall be discharged and forever barred and shall not be entitled to any Distributions under the Plan.

Any Allowed Claims arising from rejection of executory contracts and unexpired leases will be treated and paid as Class 2 General Unsecured Claims.

**ARTICLE 9
EFFECT OF REJECTION BY ONE OR MORE CLASSES**

**9.1    Impaired Classes Entitled to Vote**

Unless such Class is deemed to have accepted or rejected the Plan, each Impaired Class shall be entitled to vote separately to accept or reject the Plan. A Holder of a Disputed Claim which has not been temporarily allowed for purposes of voting on the Plan may vote only such Disputed Claim in an amount equal to the portion, if any, of such Claim or Interest shown as fixed, liquidated, and undisputed in the Debtor's Schedules of Assets and Liabilities.

**9.2    Acceptance by Class**

A Class of Claims shall have accepted the Plan if the Plan is accepted by at least two thirds (2/3) in amount and more than one half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

**9.3    Reservation of Cramdown Rights**

In the event that any Impaired Class shall fail to accept the Plan, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with the provisions of the section 1191 of the Bankruptcy Code.

## ARTICLE 10
## EFFECT OF CONFIRMATION

### 10.1    Legally Binding Effect

On the Effective Date, the provisions of the Plan shall bind all Holders of Claims and Interests, whether or not they accept the Plan and wherever located. On and after the Effective Date, all Holders of Claims and Interests shall be precluded and enjoined from asserting any Claim or Interest against the Debtor or its assets or properties based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan.

### 10.2    Vesting of Property of Debtor in Reorganized Debtor

On the Effective Date, except as otherwise expressly provided in the Plan or Confirmation Order, all Estate Property, including any "net operating losses" or similar tax attributes, shall vest in the Reorganized Debtor free and clear of all Liens, Claims, and encumbrances of any kind.

## ARTICLE 11
## INJUNCTIONS AND DISCHARGE

### 11.1    Compromise and Settlement of Claims, Interests, and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits and consideration provided by the Debtor pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Rights of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date.

### 11.2    Discharge

In the event this Plan is confirmed under Bankruptcy Code section 1191(a), then the Debtor will be discharged as of the Effective Date from any debt that arose before Confirmation of this Plan to the extent specified in Bankruptcy Code section 1141(d)(1)(A), except that the Debtor will not be discharged of any debt imposed by this Plan. In the event this Plan is confirmed under section 1191(b), Confirmation of this Plan will not discharge any debt provided for in this Plan unless the Court grants a discharge on completion of all payments due under this Plan, or as otherwise provided in Bankruptcy Code section 1192.

### 11.3    Release of Liens

Upon satisfaction in full of the amounts payable under the Plan to Holders of any Allowed Secured Claim in Class 1 (including all subclasses thereof), all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate or the Reorganized Debtor securing such Claim shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against said property shall revert to the Reorganized Debtor.

**11.4    Subordinated Claims**

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan account for the applicable relative priorities and rights of the Claims and Interests in each Class, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtor reserves the right for the Debtor or the Reorganized Debtor, as applicable, to seek a reclassification of any Claim in accordance with any contractual, legal, or equitable subordination relating thereto.

**11.5    Injunction**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, LIENS, RIGHTS OF ACTION, OR LIABILITIES THAT ARE SUBJECT TO COMPROMISE, SETTLEMENT, OR RELEASE PURSUANT TO THE TERMS OF THE PLAN OR ARE OTHERWISE STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM:

(A)    COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, RIGHTS OF ACTION, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, OR COMPROMISED CLAIMS, INTERESTS, RIGHTS OF ACTION, OR LIABILITIES;

(B)    ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTOR      OR THE REORGANIZED DEBTOR ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, OR COMPROMISED CLAIMS, INTERESTS, LIENS, RIGHTS OF ACTION, OR LIABILITIES;

(C)    CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, OR COMPROMISED CLAIMS, INTERESTS, RIGHTS OF ACTION, OR LIABILITIES;

(D)    ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR OR

THE REORGANIZED DEBTOR ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, OR COMPROMISED CLAIMS, INTERESTS, RIGHTS OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF OR SUBROGATION RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION; AND

(E)    COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, OR COMPROMISED CLAIMS, INTERESTS, RIGHTS OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN;

*PROVIDED THAT* NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIMS OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.

### 11.6    Setoffs

Except as otherwise provided in the Plan, prior to the Effective Date, the Debtor, and on and after the Effective Date, the Reorganized Debtor, pursuant to the Bankruptcy Code (including sections 553 and 558 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may set off against any Allowed Claim or Interest on account of any proof of Claim or proof of Interest or other pleading Filed with respect thereto prior to the combined hearing and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Rights of Action of any nature that the Debtor's Estate may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Rights of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claims, rights, and Rights of Action that the Debtor's Estate may possess against such Holder. In no event shall any Holder of Claims be entitled to set off any Claim against any claim, right, or Cause of Action of the Debtor's Estate unless such Holder has timely Filed a proof of Claim with the Bankruptcy Court expressly preserving such setoff; provided that nothing in the Plan shall prejudice or be deemed to have prejudiced the Debtor's or the

Reorganized Debtor's right to assert that any Holder's setoff rights were required to have been asserted by motion or pleading filed with the Bankruptcy Court prior to the Effective Date.

## ARTICLE 12
## RETENTION OF JURISDICTION

### 12.1    Exclusive Bankruptcy Court Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have such jurisdiction over the Bankruptcy Case to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

(a)    To allow, disallow, determine, liquidate, classify, or establish the priority or secured or unsecured status of, or estimate any Right of Action, Claim, or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

(b)    To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(c)    To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption, or assumption and assignment of any Executory Contract;

(d)    To consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

(e)    To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any Plan Documents or any Person's obligations in connection with the Plan or any Plan Documents, including in respect of any defaults by the Debtor or any other Person under the Plan, or to defend any of the rights, benefits, Estate Property transferred, created, or otherwise provided or confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

(f)    To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor or the Reorganized Debtor;

(g)    To adjudicate, decide, or resolve any and all matters related to sections 1192 and/or 1141 of the Bankruptcy Code

(h)    To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtor that may be pending on the Effective Date or that may be brought by the Reorganized Debtor, including claims arising under Chapter 5 of the Bankruptcy Code, or any other related proceedings by the Reorganized Debtor, and to enter and enforce any default judgment on any of the foregoing;

(i)      To issue orders in aid of execution and implementation of the Plan or any Plan Documents to the extent authorized by section 1142 of the Bankruptcy Code or provided by the terms of the Plan;

(j)      To decide issues concerning the federal or state tax liability of the Debtor which may arise in connection with the confirmation or consummation of the Plan or any Plan Documents;

(k)      To interpret and enforce any orders entered by the Bankruptcy Court in the Bankruptcy Case; and

(l)      To enter an order closing this Bankruptcy Case.

### 12.2     Limitation on Jurisdiction

In no event shall the provisions of the Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334, as well as the applicable circumstances that continue jurisdiction for defense and enforcement of the Plan and Plan Documents.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

### 13.1    Conditions to Confirmation

The Confirmation Order will not be effective unless (a) the Confirmation Order shall be in form and substance acceptable to the Debtor, (b) the Zaimi Trustee Plan Settlement and the Zaimi Reaffirmations shall have been approved by the Bankruptcy Court in the Zaimis' Individual Case, and (c) the final version of the Plan, and any other related documents, or schedules thereto, shall have been filed in form and substance acceptable to the Debtor in its reasonable discretion.

### 13.2    Conditions to Plan Effectiveness

The Plan will not be effective unless (a) the conditions to confirmation above have been either satisfied, or waived, (b) the Confirmation Order has been entered by the Bankruptcy Court, and (c) the requirements of Bankruptcy Code section 1129(a)(8)(A) shall have been satisfied because all Classes entitled to vote on the Plan shall have voted to accept the Plan.

### 13.3    Modification and Amendments

The Debtor may alter, amend, or modify this Plan under section 1193(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of this Plan (as defined Bankruptcy Code section 1101(2), the Debtor may under Bankruptcy Code section 1193(b) institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order or as may be necessary to carry out the purposes and effects of this Plan.

### 13.4    Waiver of Conditions

Each of the conditions set forth in Sections 13.1 and 13.2 may be waived in whole or in part by Debtor without any notice to other parties in interest or the Bankruptcy Court and without a hearing.

### 13.5    Exemption from Transfer Taxes

The Plan and the Confirmation Order provide for one or more of the following: (a) the issuance, transfer or exchange of notes, debt instruments and equity securities under or in connection with the Plan; (b) the creation, assignment, recordation or perfection of any lien, pledge, other security interest or other instruments of transfer; (c) the making or assignment of any lease; or (d) the making or delivery of any deed or other instrument of transfer under the Plan in connection with the vesting of the Debtor's assets in the Reorganized Debtor pursuant to or in connection with the Plan. Pursuant to section 1146 of the Bankruptcy Code and the Plan, any such act described or contemplated herein will not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

### 13.6    Post-Effective Date Fees and Expenses

From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for Bankruptcy Court approval, pay the reasonable fees and expenses of Professionals retained by the Reorganized Debtor and incurred after the Effective Date, including, without limitation, fees and expenses incurred in connection with the implementation and consummation of the Plan.

### 13.7    Defects, Omissions and Amendments of the Plan

The Debtor or the Reorganized Debtor may, with the approval of the Bankruptcy Court and without notice to Holders of Claims and Interests, insofar as it does not materially and adversely affect Holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such a manner and to such extent necessary or desirable to expedite the execution of the Plan. The Debtor may propose amendments or alterations to the Plan before or after Confirmation, consistent with Bankruptcy Code section 1193.

### 13.8    Withdrawal of Plan

The Debtor reserves the right to withdraw the Plan at any time prior to the Confirmation Date. If the Debtor withdraws the Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute an admission, waiver, or release of any claims by or against the Debtor or any other person, or to prejudice in any manner the rights of the Debtor, the Debtor's Estate, or any person in any further proceedings involving the Debtor.

### 13.9    Governing Law

Except to the extent that the Code or other provisions of federal law are applicable, the rights and obligations arising under the Plan and any documents, agreements and instruments

executed in connection with the Plan (except to the extent such documents, agreements and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Illinois (without reference to such state's law governing choice of law or forum).

### 13.10   Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in the Plan or any Plan Document shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

### 13.11   Implementation

The Debtor and the Reorganized Debtor shall be authorized to perform all reasonable, necessary, and authorized acts to consummate the terms and conditions of the Plan and the Plan Documents.

### 13.12   Entire Agreement

Except as otherwise expressly indicated herein or in the Confirmation Order, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 13.13   Severability

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the Debtor's consent, and (c) nonseverable and mutually dependent.

### 13.14   Conflicts

Except as set forth in the Plan, to the extent that any provision of any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

## CONFIRMATION REQUEST

The Debtor hereby requests confirmation of the Plan pursuant to Sections 1189, 1190, and 1191 of the Bankruptcy Code.

Dated: July 21, 2021

**Respectfully submitted,**

**OER SERVICES, LLC**

Ali R. Zalmi, President

Submitted by:

/s/ Steve Jakubowski
Steve Jakubowski (IL ARDC 6191960)
Robbins, Salomon & Patt, Ltd.
180 N. LaSalle, Suite 3300
Chicago, Illinois 60601
Phone: (312) 456-0191
Email: sjakubowski@rsplaw.com

# **<u>EXHIBIT A</u>**

## <u>EXHIBIT A</u>
## Glossary of Defined Terms

"<u>Administrative Bar Date Order</u>" means the order entered by the Bankruptcy Court establishing the Administrative Bar Date.

"<u>Administrative Claim</u>" means a Claim for the costs and expenses of administration of the Estate pursuant to section 503(b) and 507(a)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the businesses of the Debtor; and (b) Professional Fee Claims.

"<u>Administrative Claims Bar Date</u>" means the deadline for filing requests for payment of Administrative Claims (other than (x) Professional Fee Claims and (y) Administrative Claims arising in the ordinary course of business), which the Bankruptcy Court set as August 20, 2021.

"<u>Administrative Claims Objection Bar Date</u>" means the deadline for filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims), which shall be the first Business Day that is 60 days following the Effective Date; <u>provided</u> that the Administrative Claims Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

"<u>Administrative Claimant</u>" means any Person entitled to payment of an Administrative Claim.

"<u>Affiliate</u>" means any Person that is an "affiliate" of the Debtor within the meaning of Bankruptcy Code section 101(2).

"<u>Allowance Date</u>" means the date that a Claim or Equity Interest becomes an Allowed Claim or Allowed Equity Interest.

"<u>Allowed</u>" means with respect to Claims:

(a) any Claim other than an Administrative Claim that is evidenced by a Proof of Claim which is or has been timely Filed by the applicable Claims Bar Date or that is not required to be evidenced by a Filed Proof of Claim under the Bankruptcy Code or a Final Order;

(b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or

(c) any Claim Allowed pursuant to Final Order;

<u>provided</u> that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order. Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value

1

greater than the principal amount of such Claim, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.

"Assumed Contract" means an executory contract listed on the "Schedule of Assumed Contracts and Unexpired Leases" at **Exhibit D** to the Plan, as it may be amended from time to time with approval of the Bankruptcy Court.

"Avoidance Actions" means any and all avoidance, recovery, subordination, or similar remedies that may be brought by or on behalf of the Debtor or the Estate, including causes of action or defenses arising under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

"Ballot" means the form of ballot distributed to certain Holders of Claims or Interests that are entitled to vote on the Plan by which such parties may indicate acceptance or rejection of the Plan.

"Bankruptcy Case" means *In re OER Services, LLC*, Case No. 21-03981 in the United States Bankruptcy Court for the Northern District of Illinois.

"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereinafter amended, and the rules and regulations promulgated thereunder.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Illinois having jurisdiction over the Bankruptcy Case, and, to the extent of the withdrawal of any reference under section 157 of the Judicial Code, the United States District Court for the Northern District of Illinois.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as applicable to the Bankruptcy Case, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, as now in effect or hereinafter amended, and the rules and regulations promulgated thereunder.

"Business Day" means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"Cash" or "$" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

"Causes of Action" means any claim, cause of action (including Avoidance Actions or rights arising under section 506(c) of the Bankruptcy Code), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Causes of Action also include: (a) all

rights of setoff, counterclaim, cross-claim, or recoupment, and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) all claims and defenses set forth in section 558 of the Bankruptcy Code.

"CIBC" means CIBC Bank USA, N.A.

"Claim" means any claim against the Debtor or the Estate, as defined in section 101(5) of the Bankruptcy Code.

"Claims Bar Date" means the deadline for filing a Proof of Claim established by Bankruptcy Court as June 4, 2021, other than for Governmental Units.

"Claims Objection Deadline" means the first Business Day that is sixty (60) days after the Effective Date, as such deadline may be extended by order of the Bankruptcy Court.

"Claims Register" means the official register of Claims maintained by the Bankruptcy Court.

"Class" means a category of Holders of Claims or Interests as set forth in Article 3 of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

"Clerk" means the Clerk of the Bankruptcy Court.

"Collateral" means any property or interest in property that is subject to a valid and enforceable Lien to secure the payment or performance of a Claim.

"Confirmation" means the entry of the Confirmation Order on the docket of the Bankruptcy Court in the Bankruptcy Case, within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on its docket in the Bankruptcy Case, within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

"Confirmation Order" means the Order of the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

"Contract" means any agreement, contract, or lease between the Debtor and a third party, as may be supplemented, or amended from time to time prior to the entry of the Confirmation Order.

"Creditor" means any Person that holds a Claim against the Debtor, including of the kind specified in sections 502(f), 502(g), 502(h) or 502(i) of the Bankruptcy Code.

"Cure Amount" means the amount of Cash required to cure any default under an Executory Contract under 11 U.S.C. § 365(b) listed in the "Schedule of Assumed Contracts and Unexpired Leases" at **Exhibit D** hereto, as determined by the Bankruptcy Court, or pursuant to an agreement among the Reorganized Debtor and the other party(ies) to the Executory Contract.

"Debtor" means OER Services, LLC, an Illinois limited liability company and debtor-in-possession in the Bankruptcy Case.

"Debtor-in-Possession" means the Debtor in its capacity as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

"Deficiency Claim" means that portion of a Secured Claim that exceeds the value of the Lien on property securing that Claim. All Claims alleged by the Holder thereof to be a Secured Claim shall be a Deficiency Claim except to the extent such alleged Secured Claim is an Allowed Secured Claim as specifically provided in Classes 1.1 through 1.13 of Article 5 of the Plan.

"Disputed" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

"Disputed Cure Amount" means, with respect to an Executory Contract, the amount that the counterparty to such Executory Contract asserts is necessary to assume such Executory Contract under 11 U.S.C. § 365(b), to the extent different from the amount on the Executory Contract Schedule.

"Distribution" means, except as otherwise provided in the Plan, the property required by the Plan to be distributed to the holders of Allowed Claims.

"Distribution Date" means any date that a Distribution is made under the Plan.

"District Court" means the United States District Court for the Northern District of Illinois, Eastern Division.

"Effective Date" means September 1, 2021, provided that (i) no stay of the Confirmation Order is in effect and (ii) all conditions precedent specified in Sections 13.1 and 13.2 of the Plan have been satisfied or waived.

"EIDL Loan" means that certain "COVID-19 Economic Injury Disaster Loan" to the Debtor in the principal amount of $150,000, as evidenced by the certain promissory note dated August 27, 2020 from the Debtor to the SBA.

"Entity" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

"Equity Interest" means any Interest in the Debtor represented by ownership of membership interests in the Debtor, including, to the extent provided by applicable law, any warrant, option, or other security to acquire such membership interests.

"Estate" means the estate created upon the filing of the Bankruptcy Case pursuant to sections 541 and 1186 of the Bankruptcy Code, together with all rights, claims and interests appertaining thereto.

"Estate Property" means all right, title, and interest in and to any and all property of every kind or nature owned by the Debtor or its Estate on the Effective Date as defined by 11 U.S.C. § 541.

"Executory Contracts" means executory contracts and unexpired leases as such terms are used in 11 U.S.C. § 365, including all operating leases, capital leases, and contracts to which the Debtor is a party or beneficiary on the Confirmation Date.

"Existing LLC Member Interests" means the issued and outstanding LLC Member Interests of the Debtor prior to the Effective Date.

"File," "Filed," or "Filing" means a request for relief encompassed within a pleading or other document is Filed when and on such date as such pleading or other document is entered on the docket of the Bankruptcy Court in this Bankruptcy Case. A Proof of Claim is Filed when and on such date such Proof of Claim is entered on the claims register in this Bankruptcy Case.

"Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter which has not been reversed, stayed, modified, or amended, as to which the time to appeal, petition for certiorari or motion for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari or motion for reargument, reconsideration, or rehearing has been timely filed, or as to which any appeal, petition for certiorari or motion for reargument, reconsideration, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, reargument, reconsideration, or rehearing was sought; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

"General Unsecured Claims" means those Claims arising or deemed by law or under the Bankruptcy Code to have arisen on or before the Petition Date and are not Allowed Secured Claims or Allowed Priority Claims.

"Governmental Unit" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

"Holder" means any Entity holding a Claim or an Interest.

"Insider" has the meaning set forth in section 101(31) of the Bankruptcy Code.

"Interest" means any limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in the Debtor (including all options, warrants, rights, or other securities or agreements to obtain such an interest or share in the Debtor), whether or not arising under or in connection with any employment

agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security.

"Interest Holder" means any holder or owner of an Equity Interest.

"IRS" means the Internal Revenue Service.

"Judicial Code" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereinafter amended, and the rules and regulations promulgated thereunder.

"Lien" means a charge against or interest in property or Collateral to secure payment of a debt or performance of an obligation which has not been avoided or invalidated under any provision of the Bankruptcy Code or other applicable law.

"Liquidation Analysis" means the analysis set forth at **Exhibit C** to the Plan.

"Liquidation Value" means, with respect to any Class of Claims, the value of recoveries for such Class of Claims as shown in the Liquidation Analysis.

"LLC Member Interests" means any Equity Interest in the Debtor represented by ownership of member interests in the Illinois limited liability company pursuant to which the Debtor is organized.

"Local Bankruptcy Rules" means the local rules, the general orders, and the chambers rules for the United States Bankruptcy Court for the Northern District of Illinois, as now in effect or hereinafter amended, and the rules and regulations promulgated thereunder.

"OER" means OER Services, LLC, the debtor and debtor in possession herein.

"Ordinary Course Liability" means an Administrative Claim (other than a Professional Compensation Claim) based on liabilities incurred in the ordinary course of the Debtor's business operations.

"Person" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

"Petition Date" means March 26, 2021, the date on which the Debtor filed its voluntary Chapter 11 petition commencing the Bankruptcy Case.

"Plan" means this First Amended Plan of Reorganization of OER Services, LLC, dated July 21, 2021, as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms of the Plan, the Bankruptcy Code, or the Bankruptcy Rules, including all exhibits hereto, which are incorporated herein by reference and made part of this Plan as if set forth herein.

"Plan Documents" means, collectively, those material documents executed or to be executed in order to consummate the transactions contemplated under the Plan.

"Plan Scheduling Order" means that certain Order of the Court entered on July 21, 2021 (i) approving procedures for soliciting, receiving, and tabulating votes on the Plan, (ii) approving the manner and forms of notice and other documents related to Confirmation, and (iii) scheduling the Confirmation Hearing and related deadlines in respect of the Plan, including the deadline for filing objections to the Plan.

"Priority Tax Claim" means any Claim held by a Governmental Unit entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

"Pro Rata" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

"Professional" means any professional employed in the Bankruptcy Case pursuant to sections 327 or 1103 of the Bankruptcy Code or any Professional entitled to compensation pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code. For the avoidance of doubt the Subchapter V Trustee appointed pursuant § 1183(a) is also considered a Professional hereunder.

"Professional Fee Claims" means all Claims for accrued fees and expenses (including transaction or sale fees) for services rendered by a Professional through and including the Confirmation Date regardless of whether a monthly fee statement or interim fee application has been Filed for such fees and expenses. To the extent the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

"Projected Disposable Income" means the Cash amount of $ 1,190,400.

"Projections" means the financial projections for the Reorganized Debtor for the periods following the Effective Date, as set forth at **Exhibit B** to the Disclosure Statement and discussed generally in Section V of the Disclosure Statement.

"Proof of Claim" means a proof of Claim Filed against the Debtor in the Bankruptcy Case.

"Rejection Claim Bar Date" means September 30, 2021.

"Reorganized Debtor" means the Debtor as it exists after the Effective Date.

"Retained Rights of Action" means the Rights of Action identified on **Exhibit E** to the Plan.

"Rights of Action" means any and all claims, debts, demands, rights, defenses, actions, Causes of Action, suits, contracts, agreements, obligations, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, known, or unknown, suspected, or unsuspected, whether arising before, on, or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law, of the Debtor or its Estate.

7

"SBA" means the U.S. Small Business Administration.

"Schedule of Assumed Contracts and Unexpired Leases" means the schedule identifying the Executory Contracts and Unexpired Leases to be assumed by the Reorganized Debtor under the Plan. The Schedule of Assumed Contracts and Unexpired Leases is attached as **Exhibit D** to the Plan, as the same may be amended, modified, or supplemented from time to time.

"Schedules" collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as they may be or may have been amended, modified, or supplemented from time to time.

"Secured Claim" means a Claim secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code. A Secured Claim is not an Allowed Secured Claim except to the extent that such Secured Claim is classified in any of Classes 1.1 through 1.14, including any subclasses thereof.

"Subchapter V" means Subchapter V of Chapter 11 of the Bankruptcy Code.

"Subchapter V Trustee" means Neema Varghese, the trustee appointed in this Case pursuant to Bankruptcy Code section 1183.

"Tax Claim" means any Claim that is a Priority Tax Claim.

"Unexpired Lease" means an unexpired lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"Unimpaired" means a Claim or Equity Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

"U.S. Trustee" means the Office of the United States Trustee for Region 11.

"Vehicles" means those certain motor vehicles referenced in Section 5.4 of the Plan as the "2018 GMC Sierra," the "2021 Kia Telluride," and "2017 Dodge RAM."

"Zaimi Estate" means the chapter 7 bankruptcy estate created upon the filing by Ali Zaimi and April Zaimi with the Bankruptcy Court on April 30, 2021 of their joint chapter 7 petition for relief, Case No. 21-05779.

"Zaimis' Individual Case" means the joint chapter 7 petition for relief filed by the Zaimis with the Bankruptcy Court on April 30, 2021, Case No. 21-05779.

"Zaimi Reaffirmations" means those certain reaffirmations under Bankruptcy Code section 524 of the Zaimis' obligations described in Section 5.4 of the Plan.

"Zaimi Trustee" means Mr. Phillip D. Levey, not individually, but in his capacity as chapter 7 trustee of the Zaimi Estate.

"Zaimi Trustee Plan Settlement" means that certain settlement between the Debtor and the Zaimi Trustee as set forth in Section 5.4 of the Plan.

"Zaimis" means Ali Zaimi and April Zaimi, jointly.

# **<u>EXHIBIT B</u>**

**EXHIBIT B**

**FINANCIAL PROJECTIONS FOR THE REORGANIZED DEBTOR**

As a condition to confirmation, the Bankruptcy Code requires, among other things, that the Bankruptcy Court determine that confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtor. In connection with the development of the Plan, and for purposes of determining whether the Plan satisfies this feasibility standard of Bankruptcy Code section 1129(a)(11), the Debtor and certain of its advisors have analyzed the ability of the Reorganized Debtor to meet its obligations under the Plan and retain sufficient liquidity and capital resources to conduct its business. In this regard, such Persons developed certain projections of financial performance with respect to the operations of the Reorganized Debtor (the "Projections").

The Debtor prepared the Projects to reflect estimates of the Debtor's expected revenues and cash flows for several years following the assumed Effective Date of the Plan. The Projections reflect the Debtor's judgment as of the date hereof, of expected future operating and business conditions, which are subject to change. The Projections reflect numerous assumptions, which in turn reflect an assessment of business and economic conditions as well as management's experience in the Debtor's business.

The Projections were not prepared to comply with the Guidelines for Prospective Financial Statements published by the American Institute of Certified Public Accountants and by their nature are not financial statements prepared in accordance with accounting principles generally accepted in the United States of America.

The Projections are subject to a number of assumptions, risks, and uncertainties, many of which are and will be beyond the control of the Debtor. Holders of Claims and Interests are cautioned that the forward-looking statements speak as of the date made and are not guarantees of future performance. Actual results or developments may differ materially from the expectations expressed or implied in the forward–looking statements, and the Debtor and Reorganized Debtor undertake no obligation to update such statements.

THE FINANCIAL PROJECTIONS, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, ARE NECESSARILY BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS WHICH, THOUGH CONSIDERED REASONABLE BY THE DEBTOR, MAY NOT BE REALIZED AND ARE INHERENTLY SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC, COMPETITIVE, REGULATORY, MARKET, AND FINANCIAL UNCERTAINTIES AND CONTINGENCIES MANY OF WHICH ARE BEYOND THE DEBTOR'S CONTROL. THE DEBTOR CAUTIONS THAT NO REPRESENTATIONS CAN BE MADE OR ARE MADE AS TO THE ACCURACY OF THE FINANCIAL PROJECTIONS OR TO THE DEBTOR'S ABILITY TO ACHIEVE THE PROJECTED RESULTS.

SOME ASSUMPTIONS MAY PROVE TO BE INACCURATE. MOREOVER, EVENTS AND CIRCUMSTANCES OCCURING SUBSEQUENT TO THE DATE ON WHICH THE FINANCIAL PROJECTIONS WERE PREPARED MAY BE DIFFERENT FROM THOSE ASSUMED, OR, ALTERNATIVELY, MAY HAVE BEEN UNANTICIPATED, AND THUS THE OCCURRENCE OF THESE EVENTS MAY AFFECT FINANCIAL RESULTS IN A MATERIALLY ADVERSE OR MATERIALLY BENEFICIAL MANNER.

THE DEBTOR DOES NOT, AS A MATTER OF COURSE, PUBLISH OR DISCLOSE ITS FINANCIAL PROJECTIONS. ACCORDINGLY, THE DEBTOR AND THE REORGANIZED DEBTOR DO NOT INTEND AND UNDERTAKE NO OBLIGATION TO UPDATE OR OTHERWISE REVISE THE FINANCIAL PROJECTIONS TO REFLECT EVENTS OR CIRCUMSTANCES EXISTING OR ARISING AFTER THE DATE THIS PORTION OF THE DISCLOSURE STATEMENT IS FILED. THE FINANCIAL PROJECTIONS, THEREFORE, MAY NOT BE RELIED UPON AS A GUARANTY OR OTHER ASSURANCE OF THE ACTUAL RESULTS THAT WILL OCCUR. IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, HOLDERS OF CLAIMS AND INTERESTS MUST MAKE THEIR OWN DETERMINATIONS AS TO THE REASONABLENESS OF SUCH ASSUMPTIONS AND THE RELIABILITY OF THE FINANCIAL PROJECTIONS.

Exhibit A

| Projected Income Statement | FY 2022 | FY 2023 | FY 2024 | FY 2025 | FY 2026 |
|---|---|---|---|---|---|
| | Projected | Projected | Projected | Projected | Projected |
| **Income** | | | | | |
| OER Fleet Income | 1,734,194 | 1,758,195 | 1,758,195 | 1,758,195 | 1,758,195 |
| Sub Rental Income | 1,366,793 | 1,673,026 | 1,860,567 | 2,057,484 | 2,264,247 |
| Operating Lease Income | 149,279 | 149,285 | 149,285 | 149,285 | 149,285 |
| Service Income | 167,991 | 170,316 | 170,316 | 170,316 | 170,316 |
| **Total Income** | 3,418,259 | 3,750,823 | 3,938,363 | 4,135,281 | 4,342,044 |
| **Cost of Goods Sold** | | | | | |
| Commissions & Fees | 72,000 | 72,000 | 72,000 | 72,000 | 72,000 |
| Freight Costs | 30,500 | 31,263 | 32,044 | 32,845 | 33,666 |
| SubRental Costs | 1,120,771 | 1,371,882 | 1,525,665 | 1,687,137 | 1,856,683 |
| Operating Lease Costs | 100,484 | 107,485 | 107,485 | 107,485 | 107,485 |
| Service | 219,950 | 222,994 | 222,994 | 222,994 | 222,994 |
| **Total Cost of Goods Sold** | 1,543,704 | 1,805,623 | 1,960,188 | 2,122,461 | 2,292,828 |
| **Gross Profit** | 1,874,555 | 1,945,200 | 1,978,176 | 2,012,820 | 2,049,216 |
| **Expenses** | | | | | |
| Auto Fuel | 6,100 | 6,253 | 6,409 | 6,569 | 6,733 |
| Bank Charges | 6,100 | 6,253 | 6,409 | 6,569 | 6,733 |
| CC Processing Fee | 4,880 | 5,002 | 5,127 | 5,255 | 5,387 |
| Cell Phone | 15,860 | 16,257 | 16,663 | 17,079 | 17,506 |
| Dues & Subscriptions | 18,983 | 19,458 | 19,944 | 20,443 | 20,954 |
| Insurance | 81,374 | 83,408 | 85,494 | 87,631 | 89,822 |
| Legal & Professional Fees | 205,000 | 18,300 | 18,758 | 19,226 | 19,707 |
| Office Expenses | 9,150 | 9,379 | 9,613 | 9,854 | 10,100 |
| Office Rent | 87,986 | 90,186 | 92,441 | 94,752 | 97,121 |
| Out of State Agent | 1,620 | 1,661 | 1,702 | 1,745 | 1,788 |
| Parking Fees | 183 | 188 | 192 | 197 | 202 |
| Taxes | 56,886 | 56,223 | 60,092 | 62,269 | 64,609 |
| Wages-Salary | 647,205 | 627,239 | 676,095 | 700,851 | 727,615 |
| Wages-Commissions | 154,012 | 164,640 | 170,266 | 176,173 | 182,376 |
| Sales Tax | 12,200 | 12,505 | 12,818 | 13,138 | 13,467 |
| Shipping - NonEquipment | 3,050 | 3,126 | 3,204 | 3,285 | 3,367 |
| Software | 42,733 | 43,802 | 44,897 | 46,019 | 47,169 |
| Taxes & Licenses | 1,220 | 1,251 | 1,282 | 1,314 | 1,347 |
| Tolls | 1,952 | 2,001 | 2,051 | 2,102 | 2,155 |
| Meals w/ Customers | 3,660 | 3,752 | 3,845 | 3,941 | 4,040 |
| Utilities | 15,250 | 15,631 | 16,022 | 16,423 | 16,833 |
| **Total Expenses** | 1,375,406 | 1,186,511 | 1,253,323 | 1,294,834 | 1,339,030 |
| **EBITDA** | 499,149 | 758,689 | 724,853 | 717,985 | 710,186 |
| Sale of Assets | 277,407 | 54,340 | 191,120 | 146,064 | 62,250 |
| Projected Gross CapEx | 270,000 | 103,599 | 61,498 | - | - |
| **Cash Flow Available for Creditors** | $ 506,556 | $ 709,429 | $ 854,475 | $ 864,049 | $ 772,436 |
| **Senior/Priority Creditor Payments** | | | | | |
| Priority Tax Claims | 25,116 | 25,116 | 25,116 | 25,116 | 12,558 |
| CIBC Secured Claims | 345,071 | 345,071 | 345,071 | 345,071 | 345,071 |
| Other Secured Claims/Class 4 Creditors | 377,592 | 187,412 | 138,963 | 69,082 | 20,417 |
| **Total Paid to Senior/Priority Creditors** | 747,779 | 557,599 | 509,150 | 439,269 | 378,046 |
| **Disposable Income for Unsecured Creditors** | $ (241,223) | $ 151,830 | $ 345,325 | $ 424,780 | $ 394,390 |

## Notes to Projections

The Projections should be read in conjunction with the assumptions, qualifications, and the footnotes to tables containing the Projections set forth hereinafter. The principal assumptions used in preparing the Projections, in addition to those contained within the body of the Projections themselves, are as follows:

1) Projection Period:  September 1, 2021 through August 31, 2026

2) Plan Effective Date:  September 1, 2021.

3) Income:
    a. General Revenue Growth:
        i. Revenue growth is projected in the below chart with the following % of splits for each line of income:

| Revenue Growth Assumptions | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 |
|---|---|---|---|---|---|---|
| Gross Revenue | 0% | 3% | 5% | 5% | 5% | 5% |
| Subrental Split | 100% | 100% | 100% | 100% | 100% | 100% |
| Operating Lease Split | 0% | 0% | 0% | 0% | 0% | 0% |
| Fleet Split | 0% | 0% | 0% | 0% | 0% | 0% |

    b. OER Fleet Income
        i. OER Fleet income is based on current usage and projected usage of financed OER Fleet.
        ii. Approximately 98.67% of all contracts are projected to be renewed/replaced to account for aggressive sales approach
        iii. We do not assume any fleet growth due to being unable to secure outside financing following the bankruptcy

    c. Subrental Income
        i. Subrentals are short-term rentals which OER rents from another equipment rental company for the purpose of servicing a contract without acquiring a new piece of equipment through financing or an operating lease
        ii. Revenue for 2021 is based on current contracts in place
        iii. Revenue for 2022 through 2026 is projected to grow at the split depicted in the chart in 1.a.i above

    d. Operating Lease Split
        i. Revenue for 2021 is based on current contracts in place
        ii. We anticipate leasing out all equipment that is currently leased, but do not anticipate any additional operating lease equipment due to being unable to secure outside financing following the bankruptcy

    e.  Service Income
        i.  Service income is projected based on service costs for owned fleet that can be passed on to the customers.
           1.  On average, service income equates to 9-10% of annual service income

4) <u>Cost of Goods Sold</u>
    a.  Commissions and Fees
        i.  Commissions and fees are fees paid to brokers for new contracts. On average, commissions come out to be approximately $6,000/mo.

    b.  Freight Costs
        i.  Freight costs are costs to ship OER Fleet and Operating Lease equipment. On average, freight costs are approximately $2,500/mo.

    c.  Subrental Costs
        i.  Subrental costs are the costs associated with short-term rentals from other equipment companies which OER utilizes to service a contract without acquiring a new piece of equipment through financing or an operating lease
        ii.  On average, subrental costs are approximately 82% of subrental income

    d.  Operating Lease Costs
        i.  Operating lease costs are the costs associated with operating leases that OER takes on to finance equipment off-balance sheet.
        ii.  On average, Operating Lease costs are approximately 72% of operating lease income

    e.  Service
        i.  Service costs are the costs associated with servicing OER Fleet equipment
        ii.  Service costs are approximately 12-13% of OER fleet income for the year (of which approximately 9-10% is recovered from the customer, which is "Service Income")

5) Operating Expenses
    a.  Operating Expenses remain steady and grow at 2.5% per year except for Salaries/Wages
        i.  Professional Fees
           1.  Professional Fees are projected to be higher in 2021 due to the costs incurred in connection with the Case and are projected to reduce to $1,500/mo. for ongoing consulting and accounting needs
           2.  Except for the approved fees of the Subchapter V Trustee, the Allowed Professional Fees will be paid out over 10 months starting October 1, 2021

        ii.  Salaries/Wages

             1.  Salaries and wages are based on a defined schedule for anticipated staffing needs. This schedule can be provided upon request.

6) Creditors

    a.  Priority Tax Claims

        i.  Priority tax claims from governmental organizations will be paid on a fully amortizing basis over the course of 54 months starting in September of 2021

    b.  CIBC Secured Debt

        i.  $1,500,000 plus interest paid over 5 years in equal monthly installments

    c.  Other Secured Creditors

        i.  Debt service for other Secured Creditors with purchase money security interests in specific, identifiable pieces of equipment sold to the Debtor is based on a fully amortizing credit over the remaining life of the respective financings with the terms of the financings extended by the same number of months as the Debtor was in arrears in respect of these financings as of the Effective Date

    d.  Disposable Income For Unsecured Creditors

        i.  Unsecured creditors will be paid all "Disposable Income for Unsecured Creditors"

        ii.  A cash reserve of $350,000 will be required for working capital due to being unable to source outside financing for a working capital line of credit

        iii.  The projected excess cash balance at August 31, 2021 will be paid in the final installment on August 31, 2026, bringing to $1,075,102 the total distributable amount paid to Holders of Allowed Class 2 General Unsecured Claims under the Plan (representing an estimated 27.11% recovery to such claimants in the aggregate)

    e.  Class 4 Zaimi Estate Claims

        i.  The Class 4 Claims of the Zaimi Estate shall receive the treatment set forth in Section 5.4 of the Plan; provided, however, that a condition to acceptance of the Plan by the Zaimi Trustee is approval by the Bankruptcy Court of the Zaimi Trustee Plan Settlement and the Zaimi Reaffirmations

## **EXHIBIT C**

## EXHIBIT C

## LIQUIDATION ANALYSIS

**A.**    *Purposes and Limitations of the Liquidation Analysis*

Notwithstanding acceptance of the Plan by an Impaired Class, if the Bankruptcy Court is to confirm the Plan, the Bankruptcy Court must find, pursuant to Bankruptcy Code section 1129(a)(7), that the Plan is in the "best interests" of each holder of an Allowed Claim or Interest in any such Impaired Class who has not voted to accept the Plan.  Accordingly, if an Impaired Class does not unanimously accept the Plan, this so-called "best interests" test requires that the Bankruptcy Court find that the Plan provides to each member of such Impaired Class, on account of each holder's Allowed Claim or Allowed Interest within that Class, a recovery that has a value, as of the Effective Date, at least equal to the value of the distribution that each such holder would receive if the Debtor were to be liquidated under chapter 7 of the Bankruptcy Code on such date.  Bankruptcy Code section 1129(a)(7) does not require the recovery under the Plan to be in Cash, but merely requires that the value of the property distributed under the Plan to each such holder exceed the value of the property that would be distributed to such holder upon the Debtor's liquidation under chapter 7 of the Bankruptcy Code.

This Liquidation Analysis was prepared by the Debtor's management.  The Liquidation Analysis is based on estimates and assumptions that are subject to significant uncertainties, including estimates and assumptions relating to potential recoveries for the sale of certain assets and the timing of such sales.  While the Debtor believes that these estimates and assumptions are reasonable for preparing a hypothetical chapter 7 liquidation analysis, there can be no assurance that such estimates and assumptions would be valid if the Debtor were, in fact, to be liquidated under chapter 7.

The asset valuations underlying the liquidation values in the Liquidation Analysis have been prepared solely to estimate the potential proceeds available for distribution in a hypothetical chapter 7 liquidation of the Estate and do not represent values that may be appropriate for any other purpose, including valuation of a Secured Creditor's Allowed Claim under Bankruptcy Code section 506.

Based on the analysis set forth hereinafter, the Debtor believes that the Plan satisfies the "best interests" test of Bankruptcy Code section 1129(a)(7).

**B.**        *Liquidation Analysis and Accompanying Notes*

**OER SERVICES, LLC**
**LIQUIDATION ANALYSIS**
**(as of 4/30/2021)**

|  | Estimated Liq. Value (1) |
|---|---|
| Current Assets (Encumbered): (2) | $    345,000 |
| Encumbered Assets: (3) | $  1,504,000 |
| Total Estimated Liquidation Proceeds: | $  1,849,000 |

| | Projected Aggregate Claims/Interests (unaudited) | Percent Recovery of Allowed Claims in Liquidation |
|---|---|---|
| Trustee Fees | $      25,000 | 100% |
| Administrative Claims | $    185,000 | 0% |
| Priority Tax Claims | $    113,000 | 0% |
| Secured Claims | $  2,200,000 | 76% |
| Unsecured Claims | $  4,000,000 | 0% |
| Member Interests | 100% | 0% |

2

### *Notes to the Liquidation Analysis*

      *(1)*    ***Timing and Nature of Liquidation Process***:  Under Bankruptcy Code section 704, a court appointed chapter 7 trustee must, among other duties, collect and convert the property of the debtor estate as expeditiously as is compatible with the best interests of the parties in interest.  It is assumed in this Liquidation Analysis that the Debtor could not be sold as a going concern.

      *(2)*    ***Encumbered Assets***:  All of the Debtor's assets are encumbered. It is assumed in this Liquidation Analysis that, upon conversion of the chapter 11 case to a chapter 7 liquidation, existing Secured Creditors would successfully move the Bankruptcy Court for an order under Bankruptcy Code section 362 lifting the automatic stay and allowing them to foreclose on the assets that secure their respective Liens. The Debtor further assumes in this liquidation analysis that there is no equity remaining in the assets after payment of all Liens against the assets, inclusive of the blanket security interest of CIBC.  As such, the liquidation analysis assumed that no net proceeds would be available for distribution on account of General Unsecured Claims, postpetition Administrative Claims, Priority Tax Claims, or LLC Member Interests. The values of the encumbered assets are drawn from an appraisal conducted by Rouse Appraisals LLC dated June 11, 2021 with a "Value Effective Date" of April 30, 2021.

# **EXHIBIT D**

## EXHIBIT D

### Schedule of Assumed Contracts and Unexpired Leases

The Debtor, in the exercise of sound business judgment, has determined to assume the following executory contracts, effective as of the Effective Date. The Debtor reserves the right to add other Executory Contracts and Unexpired Leases to this Schedule through the conclusion of the Confirmation Hearing:

| Line No. | Contract Counterparty[1] | Contract Number | Cure Amount[2] |
|----------|--------------------------|-----------------|----------------|
| 1 | Sch. G - Customer 1 | xxx-P0035 | $0.00 |
| 2 | Sch. G - Customer 3 | xxx-P0214 | $0.00 |
| 3 | Sch. G - Customer 4 | xxx-70002 | $0.00 |
| 4 | Sch. G - Customer 5 | xxx-00907 | $0.00 |
| 5 | Sch. G - Customer 6 | xxx-P0015 | $0.00 |
| 6 | Sch. G - Customer 7 | xxx-P0193 | $0.00 |

---

[1] References to "Sch. G Customer [_]" are to customers that are parties to executory contracts with the Debtor for the rental of project equipment and are listed in the same sequential order on the redacted [Dkt No. 42] and unredacted [Dkt. No. [__] Schedule G filing of the Debtor. The Court authorized the Debtor to identify these customers under seal [Dkt. No. 63].

[2] "Cure Amount" means the amount of Cash required to cure any default (including unpaid amounts through the Plan Effective Date) under an Assumed Contract. For purposes of this Plan, the cure amounts listed below for Contract Line Nos. 27-33 represent the unpaid balances owed the contract counterparty on account of regular monthly payments due (both prepetition and postpetition) through and including August 31, 2021. If the Confirmation Order is entered on or before September 1, 2021, then regular monthly payments under the Assumed Contracts will resume on September 1, 2021 and the cure amounts will be repaid to the contract counterparty in four (4) equal monthly installments commencing September 1, 2021.

1

| 8 | Sch. G - Customer 10 | xxx-P0049 | $0.00 |
| 9 | Sch. G - Customer 12 | xxx-D5000 | $0.00 |
| 10 | Sch. G - Customer 13 | xxx-P5008 | $0.00 |
| 11 | Sch. G - Customer 14 | xxx-P0424 | $0.00 |
| 12 | Sch. G - Customer 15 | xxx-97468 xxx-V6504 | $0.00 |
| 13 | Sch. G - Customer 16 | xxx-P8192 | $0.00 |
| 14 | Sch. G - Customer 17 | xxx-16219 | $0.00 |
| 15 | Sch. G - Customer 18 | xxx-35003 | $0.00 |
| 16 | Sch. G - Customer 19 | xxx-P0098 | $0.00 |
| 17 | Sch. G - Customer 20 | xxx-28Y00 | $0.00 |
| 18 | Sch. G - Customer 21 | xxx-D0018 xxx-P0037 | $0.00 |
| 19 | Sch. G - Customer 22 | xxx-A0010 | $0.00 |
| 20 | Sch. G - Customer 23 | xxx-D0049 | $0.00 |
| 21 | Sch. G - Customer 24 | xxx-P0069 | $0.00 |
| 22 | Sch. G - Customer 26 | xxx-P0021 | $0.00 |
| 23 | Sch. G - Customer 27 | xxx-P0003 | $0.00 |
| 24 | Sch. G - Customer 29 | xxx-PN066 | $0.00 |

| 25 | Sch. G - Customer 30 | xxx-P0296<br>xxx-P0289<br>xxx-P0037 | $0.00 |
|----|---------------------|-----------------------------------|-------|
| 26 | Sch. G - Customer 31 | xxx-P0007 | $0.00 |
| 27 | Equity Building Financial | xxx-001<br>xxx-002 | $0.00 |
| 28 | Toyota Commercial Finance | xxx-8096 | $8,133.38 |
| 29 | Toyota Commercial Finance | xxx-0255 | $0.00 |
| 30 | Toyota Commercial Finance | xxx-2307 | $0.00 |
| 31 | Toyota Commercial Finance | xxx-8095 | $0.00 |
| 32 | Williams Scotsman | xxx-3922<br>xxx-3895<br>xxx-4042<br>xxx-4038 | $5,368.09 |
| 33 | Westmount Realty | Office Lease | $21,436.86 |

**EXHIBIT E**

**<u>Retained Causes of Action</u>**

1.  All counterclaims or other Rights of Action that were or could be asserted by the Debtor against any Creditor of the Debtor that has filed a Proof of Claim or against any Person or Entity whose Claim or Interest is listed on the Schedules or on any other list filed by the Debtor in this Case.